Susan M. BLAUSTEIN; Hilda K. Blaustein Trust, F/B/O Susan M. Blaustein, U/A Dated 8/2/72, by and through its Trustee Susan M. Blaustein; Morton K. Blaustein Trust U/W Item XVII–A F/B/O Susan M. Blaustein, by and through its Trustee Susan M. Blaustein; Morton K. Blaustein Trust U/W Item XVII–B F/B/O Susan M. Blaustein, by and through its Trustee Susan M. Blaustein; Morton K. Blaustein Trust U/W Item XVII–C F/B/O Susan M. Blaustein, by and through its Trustee Susan M. Blaustein; and Morton K. Blaustein Trust U/W Item XVIII–C F/B/O Susan M. Blaustein, by and through its Trustee Susan M. Blaustein, Plaintiffs Below, Appellants,

v.

LORD BALTIMORE CAPITAL CORPORATION and Louis B. Thalheimer, Defendants Below, Appellees.

No. 272, 2013.

Supreme Court of Delaware.

Submitted: Nov. 6, 2013.

Decided: Jan. 21, 2014.

Peter J. Walsh, Jr., Esquire, Matthew D. Stachel, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware; Of Counsel: Nicholas T. Christakos, Esquire (argued) and Ronald R. Massumi, Esquire, Sutherland Asbill & Brennan LLP, Washington, D.C. for Appellants.

S. Mark Hurd, Esquire (argued) and Adam M. Kress, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, for Appellee Lord Baltimore Capital Corporation.

John L. Reed, Esquire, DLA Piper LLP (US), Wilmington, Delaware, for Appellee Louis B. Thalheimer.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices and WITHAM, Judge,* constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider whether a minority stockholder in a closely held corporation has a right to a non-conflicted board decision on whether to repurchase her shares. The stockholder argues that such a right exists, both under common law fiduciary duty principles and under the implied covenant of good faith and fair dealing. The Court of Chancery found that the common law does not impose any duties on directors of closely held corporations to consider buying out minority stockholders. The trial court also found that, given the language in the repurchase provision of the stockholders agreement, the implied covenant of good faith and fair dealing does not create any duty to negotiate a reasonable repurchase price. We agree and affirm.

---

* Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from Susan M. Blaustein's [1] unsuccessful attempts to sell her stock in Lord Baltimore Capital Corporation, a closely held Delaware corporation that was created by members of the Thalheimer family in 1998.[2] The Thalheimer stockholders are Louis Thalheimer ("Louis"), Marjorie Thalheimer Coleman ("Marjorie"), and Elizabeth Thalheimer Wachs ("Elizabeth").

On January 1, 1999, Blaustein and her sister, Jeanne, became stockholders pursuant to the Lord Baltimore Capital Corporation Shareholders' Agreement. Paragraph 7(d) of the Shareholders' Agreement addresses repurchases of stock from minority stockholders. That provision states:

> Notwithstanding any other provision of this Agreement, the Company may repurchase Shares upon terms and conditions agreeable to the Company and the Shareholder who owns the Shares to be repurchased provided that the repurchase is approved either (i) by a majority, being at least four, of all of the Directors of the Company then authorized (regardless of the number attending the meeting of the Board of Directors) at a duly called meeting of the Board of Directors or (ii) in writing by Shareholders who, in the aggregate, own of record or beneficially 70% or more of all Shares then issued and outstanding.[3]

Despite the existence of this provision, Blaustein alleges that she bought into Lord Baltimore with the understanding that, after a ten-year waiting period, she would be guaranteed the opportunity to sell her stock for full value. This understanding allegedly was based on several oral promises from Louis, who explained to her that he could not put the promises into writing because "doing so might jeopardize the 'S' corporation tax status of Lord Baltimore and possibly jeopardize as well the Section 355 tax-free treatment of the transactions that had resulted in ... the formation of Lord Baltimore."[4]

When Blaustein attempted to sell her stock, after the ten-year period had expired, Louis refused to offer her anything better than a 52% discount from the net asset value of her shares. Blaustein tried to negotiate, and made several proposals for a buyout at a less severe discount. Louis presented some of Blaustein's proposals to the Lord Baltimore board, and the board discussed them at several board meetings, but Louis and the board did not deviate from their requirement of a 52% discount. Not surprisingly, the parties dispute the board's motivation. Louis argues that he and the other Thalheimer directors [5] have acted at all times in Lord Baltimore's best interests. Blaustein argues that a majority of Lord Baltimore's seven directors (i.e., all four Thalheimer directors) are conflicted and that they rejected her proposals in order to preserve personal tax benefits that might have been

---

1. Blaustein appeals individually and as trustee of several trusts she directs.

2. Several members of the family transferred their assets from the American Trading and Production Corporation ("Atapco") into The American Trading Real Estate Company, Inc., which then changed its name to Lord Baltimore.

3. Appellants' Appendix at A–88–89.

4. Appellants' Appendix at A–22 (Verified Complaint ¶ 23).

5. The "Thalheimer directors" are the four directors elected by the Thalheimer stockholders: Louis, Elizabeth, William Coleman (Marjorie's husband), and Donald Kilpatrick.

jeopardized were they to allow Blaustein to cash out at a reasonable price.

Blaustein filed a complaint in the Court of Chancery against Louis and Lord Baltimore (collectively, "Louis," unless the context requires otherwise) alleging promissory estoppel, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. In its May 31, 2012 Memorandum Opinion,[6] the Court of Chancery dismissed that complaint except as to the implied covenant claim. Louis then moved for summary judgment on the implied covenant claim, and Blaustein sought leave to amend her complaint to allege a new fiduciary duty claim and a new implied covenant claim. In its April 30, 2013 Memorandum Opinion,[7] the Court of Chancery granted Louis's motion for summary judgment and denied Blaustein's request to amend her complaint. This appeal followed.

### DISCUSSION

Blaustein appeals from the Court of Chancery's rejection of two proposed new claims she sought to add by amending her complaint—one for breach of fiduciary duty, and one for breach of the implied covenant of good faith and fair dealing. Blaustein does not challenge the dismissal of her other claims. As explained below, we find that the Court of Chancery correctly rejected both proposed new claims.

6. *Blaustein v. Lord Baltimore Capital Corp.,* 2012 WL 2126111 (Del.Ch. May 31, 2012).

7. *Blaustein v. Lord Baltimore Capital Corp.,* 2013 WL 1810956 (Del.Ch. Apr. 30, 2013).

8. Appellants' Appendix at A–1470 (Proposed Amended and Supplemented Verified Complaint ¶ 80).

9. *Id.* ¶¶ 78–79.

### I. *Fiduciary Duty Claims*

Blaustein moved to amend her complaint to add a claim for breach of fiduciary duty against the Thalheimer directors. In her proposed Amended and Supplemented Verified Complaint, Blaustein alleges that the Thalheimer directors breached their fiduciary duties by failing to consider and negotiate, free of conflict, a repurchase of her shares. This breach, Blaustein alleges, has directly harmed her by depriving her of liquidity and control over her asset portfolio.[8] Blaustein also appears to allege that the Thalheimer directors' failure to accept her repurchase proposals amounted to a breach that harmed "Lord Baltimore and its shareholders as a whole."[9] Thus, Blaustein's breach of fiduciary duty claim actually contains two separate claims—one direct and one derivative.[10]

### A. Direct Claim

■ Blaustein alleges that the Thalheimer directors acted out of self-interest when they refused to negotiate a repurchase of her shares at anything less than a 52% discount. She argues that these allegations of self-interest are sufficient to trigger entire fairness review because Blaustein has a "right to a non-conflicted corporate decision" on whether her shares should be repurchased and at what price.[11] Blaustein relies on both common law fiduciary duty principles and Paragraph 7(d) of the Shareholders' Agreement in support of her claim.

10. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del.2004) (explaining that the issue of whether a stockholder's claim is derivative or direct "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?").

11. Appellants' Opening Brief at 26.

■ Under common law, the directors of a closely held corporation have no general fiduciary duty to repurchase the stock of a minority stockholder.[12] An investor must rely on contractual protections if liquidity is a matter of concern.[13] Blaustein has no inherent right to sell her stock to the company at "full value," or any other price. It follows that she has no right to insist on the formation of an independent board committee to negotiate with her.

■ The Shareholders' Agreement provides the only protection available to Blaustein. But the relevant provision, Paragraph 7(d), gives the stockholder and the company discretion as to whether to engage in a transaction, and as to the price. It does not impose any affirmative duty on either party to consider or negotiate any repurchase proposal. In sum, Blaustein's direct fiduciary duty claim would be subject to dismissal under Rule 12(b)(6), and the trial court correctly denied her motion to amend the complaint to add that claim.[14]

## B. Derivative Claim

■ The trial court noted that Blaustein's proposed amended complaint could be read to allege a derivative claim.[15] Blaustein alleges that her repurchase proposal created an investment opportunity for Lord Baltimore that the Thalheimer directors failed faithfully to consider because they were concerned with preserving their personal tax planning interests. This allegation implicates the directors' duty to act at all times in good faith and in the furtherance of the corporation's bests interests.[16] A failure to do so would harm Lord Baltimore directly, and all of its stockholders derivatively.

■ To maintain a derivative claim, a stockholder must allege that the company wrongfully refused a demand to address the alleged wrong, or that a demand on the board would have been futile.[17] The mere allegation that there is a control group within the board is insufficient to excuse demand.[18] Rather, a plaintiff must allege with particularity that a majority of the board lacks independence or is otherwise incapable of validly exercising its business judgment.[19]

Blaustein made no demand, and her futility allegations are conclusory. At best, the allegations create a reasonable doubt as to the independence of three of the seven Lord Baltimore directors: Elizabeth, Coleman and Louis. The complaint challenges Kilpatrick's independence only by alleging that he was appointed by the Thalheimer stockholders and that he has

---

**12.** *See Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010).

**13.** *Nixon v. Blackwell*, 626 A.2d 1366 (Del. 1993).

**14.** *See Cartanza v. Lebeau*, 2006 WL 903541, at *2 (Del.Ch. Mar. 28, 2006) ("A court will not grant a motion to amend, however, if the amendment would be futile. An amendment is futile if it would not survive a motion to dismiss under Court of Chancery Rule 12(b)(6).") (citation omitted).

**15.** *See Blaustein*, 2013 WL 1810956, at *18.

**16.** *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del.2006).

**17.** *See* Ct. Ch. Rule 23.1 ("The complaint shall ... allege with particularity the efforts, if any ... to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort.")

**18.** *See Aronson v. Lewis*, 473 A.2d 805, 815 (Del.1984) ("[I]n the demand context even proof of majority ownership of a company does not strip the directors of the presumptions of independence....").

**19.** *See Aronson*, 473 A.2d at 817.

voted with them in the past. Such allegations, without more, are insufficient to demonstrate a lack of independence.[20] Because a majority of the directors are independent, demand is not excused. Thus, the derivative claim also would be subject to dismissal, and the Court of Chancery properly denied leave to amend.

## II. Implied Covenant Claim

Blaustein argues that the Court of Chancery erred by rejecting her proposed new claim for breach of the implied covenant of good faith and fair dealing.[21] The proposed complaint alleges that Paragraph 7(d) of the Shareholder Agreement contains an implied contractual right to good-faith negotiation of stockholder redemption proposals. But the plain language of Paragraph 7(d) gives both parties complete discretion in deciding whether, and at what price, to execute a redemption transaction. Paragraph 7(d) states that "the Company [Lord Baltimore] *may* repurchase Shares upon terms and conditions agreeable to the Company and the Shareholder who owns the Shares to be repurchased...."[22] This provision is permissive. The remainder of Paragraph 7(d) requires that any repurchase be approved by a majority of the directors or 70% of the stockholders. The approval requirement protects Lord Baltimore and the non-selling stockholders from a stock repurchase that is not in their best interest.

■ The implied covenant of good faith and fair dealing cannot be employed to impose new contract terms that could have been bargained for but were not.[23] Rather, the implied covenant is used in limited circumstances to include "what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting."[24] Here, the parties did consider whether, and on what terms, minority stockholders would be able to have their stock repurchased. Paragraph 7(d) does not contain any promise of a "full value" price or independent negotiators. Because the implied covenant does not give parties the right to renegotiate their contracts, the trial court correctly denied Blaustein's proposed new claim.

## III. Blaustein's allegations sound in fraud

A key factual allegation in Blaustein's original complaint is that, before she decided to invest in Lord Baltimore, Louis Thalheimer orally promised that she would be able to withdraw from her investment after a 10–year waiting period at full value.[25] Louis allegedly told Blaustein that his oral promise could not be included in the

---

**20.** *Ibid.; see also Khanna v. McMinn*, 2006 WL 1388744, at *15 (Del.Ch. May 9, 2006).

**21.** The procedural posture of Blaustein's implied covenant claim on appeal is somewhat murky. Blaustein argues that the Court of Chancery erred by applying the summary judgment standard when it should have evaluated the claim under the standard for amendment of pleadings as set forth in Court of Chancery Rule 15(a). We assume *arguendo* that Blaustein is correct and find that, even under a Rule 15(a) analysis, the Court of Chancery correctly rejected Blaustein's implied covenant claim because amendment would be futile.

**22.** Appellants' Appendix at A–88.

**23.** *See Nemec*, 991 A.2d at 1126 (stating that courts should "not rewrite [a] contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal.").

**24.** *Gerber v. Enterprise Products Holdings, LLC*, 67 A.3d 400, 418 (Del.2013) (emphasis added).

**25.** *See* Appellant's Appendix at A–31 (Verified Complaint at ¶¶ 48–49).

Shareholders' Agreement because it might have negative tax implications and jeopardize Lord Baltimore's status as an "S" Corporation.[26] In reliance on Louis's oral promise of liquidity after ten years, Blaustein purchased Lord Baltimore stock.[27] These facts suggest a claim for fraud in the inducement.[28] But Blaustein did not argue to this Court or the trial court that her claim was one for fraud. As a result, we cannot consider whether relief is available under this theory.

## CONCLUSION

Based on the foregoing, the judgment of the Court of Chancery is hereby AFFIRMED.

26.  *Id.* at ¶ 50.

27.  *Id.* at ¶¶ 50–51.

28.  *See Zirn v. VLI Corp.,* 681 A.2d 1050, 1060–61 (Del.1996).