IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NAF HOLDINGS, LLC, | § | |
| | § | No. 641, 2014 |
| Plaintiff/Counter-Defendant, | § | |
| Appellant, | § | Certification of Question of |
| | § | Law from the United States |
| v. | § | Court of Appeals for the |
| | § | Second Circuit in |
| LI & FUNG (TRADING) LIMITED, | § | Docket No. 13-830-cv |
| | § | |
| Defendant/Counter-Claimant, | § | |
| Appellee. | § | |

Submitted: June 17, 2015
Decided: June 24, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon Certification of Question of Law from the United States Court of Appeals for the Second Circuit. **CERTIFIED QUESTION ANSWERED**.

Michael F. Bonkowski, Esquire, Cole, Schotz, Meisel, Forman & Leonard, P.A., Wilmington, Delaware; Bruce H. Nagel, Esquire (*argued*), Robert H. Solomon, Esquire, Andrew Pepper, Esquire, Nagel Rice, LLP, Roseland, New Jersey, for Appellant.

Richard D. Heins, Esquire, Peter H. Kyle, Esquire, Ashby & Geddes, Wilmington, Delaware; John J. Hay, Esquire (*argued*), Ulyana Bardyn, Esquire, Dentons US LLP, New York, New York, for Appellee.

STRINE, Chief Justice.

# I. INTRODUCTION

The U.S. Court of Appeals for the Second Circuit has certified the following question of law arising out of an appeal from a decision issued by the U.S. District Court for the Southern District of New York:

> Where the plaintiff has secured a contractual commitment of its contracting counterparty, the defendant, to render a benefit to a third party, and the counterparty breaches that commitment, may the promisee-plaintiff bring a direct suit against the promisor for damages suffered by the plaintiff resulting from the promisor's breach, notwithstanding that (i) the third-party beneficiary of the contract is a corporation in which the plaintiff-promisee owns stock; and (ii) the plaintiff-promisee's loss derives indirectly from the loss suffered by the third-party beneficiary corporation; or must the court grant the motion of the promisor-defendant to dismiss the suit on the theory that the plaintiff may enforce the contract only through a derivative action brought in the name of the third-party beneficiary corporation?[1]

For reasons we explain more fully, the answer under Delaware law is, "a promisee-plaintiff [may] bring a direct suit against the promisor for damages suffered by the plaintiff resulting from the promisor's breach, notwithstanding that (i) the third-party beneficiary of the contract is a corporation in which the promisee-plaintiff owns stock; and (ii) the promisee-plaintiff's loss derives indirectly from the loss suffered by the third-party beneficiary corporation." In other words, a party to a commercial contract who sues to enforce its contractual rights can bring a direct contract action under Delaware law. Although the relationship of that party to the third-party beneficiary might well have relevance in determining whether the contract claim is viable as a matter of contract

---

[1] *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 750 (2d Cir. 2014).

law, nothing in Delaware law requires the promisee-plaintiff's contract claim to be prosecuted as a derivative action.

The case law under *Tooley v. Donaldson, Lufkin & Jenrette*[2] and its progeny deal with the distinct question of when a cause of action for breach of fiduciary duty or to enforce rights belonging to the corporation itself must be asserted derivatively. That body of law has no bearing on whether a party with its own rights as a signatory to a commercial contract may sue directly to enforce those rights.

## II. THE EVENTS LEADING TO THE CERTIFIED QUESTION[3]

NAF Holdings, LLC ("NAF"), a Delaware limited liability holding company wholly owned by Efrem Gerszberg, sought to acquire Hampshire Group, Limited ("Hampshire"), a public company that produces and markets fashion apparel. NAF contracted with Li & Fung (Trading) Limited ("Li & Fung"), a Hong Kong Company, to serve as the sourcing agent for Hampshire, which was an essential condition for the third-party financing commitments NAF needed to complete the acquisition. After contracting with Li & Fung, NAF created two wholly-owned subsidiaries (the "NAF Subsidiaries") to effectuate the acquisition. The NAF Subsidiaries entered into a merger agreement with Hampshire, which was to take effect when the Subsidiaries purchased Hampshire's stock in a tender offer. NAF was not a party to the merger agreement.

According to NAF, Li & Fung then repudiated its contract with NAF and refused to serve as Hampshire's sourcing agent, causing NAF to lose its financing commitments.

---

[2] 845 A.2d 1031, 1039 (Del. 2004).
[3] The facts are taken from the Second Circuit's opinion certifying the question of law to this Court and from the record submitted by the parties.

NAF claims that because of Li & Fung's breach, it was unable to fund the NAF Subsidiaries' acquisition of Hampshire, which allegedly resulted in a $30 million loss.

After the NAF Subsidiaries and Hampshire terminated their merger agreement, Gerszberg drafted a complaint against Hampshire, alleging a variety of claims. The Subsidiaries and Hampshire eventually entered into a settlement agreement in which the Subsidiaries released all claims against Hampshire. The Subsidiaries also agreed not to initiate or support any action "against any person, whether or not a party to [the] settlement agreement" for any "losses sustained as a result of the transaction agreements or the transaction."[4] Gerszberg was a signatory to that agreement individually, but NAF and Li & Fung were not.

NAF then sued Li & Fung in the U.S. District Court of the Southern District of New York, seeking damages based on the harm Li & Fung allegedly caused when it breached its contract with NAF. The complaint sought $30 million in damages for the reduced value of NAF's property, that is, the diminution in value of the NAF Subsidiaries' stock.

Li & Fung moved for summary judgment on the ground that NAF could only bring its claim as a derivative action on behalf of the NAF Subsidiaries. The District Court granted Li & Fung's motion, concluding that because NAF was injured in its capacity as 100% owner of the NAF Subsidiaries, which had directly incurred the losses,

---

[4] *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 2013 WL 489020, at *6 (S.D.N.Y. Feb. 8, 2013) (quoting the Settlement Agreement entered into between the NAF Subsidiaries, Gerszberg, and Hampshire).

3

NAF's contract claim against Li & Fung could not be maintained as a direct suit.[5] In so holding, it relied on this Court's decision in *Tooley v. Donaldson, Lufkin & Jenrette*, which stated that when determining whether a claim is direct or derivative,

> [a] court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.[6]

Because NAF had not attempted to meet the pleading requirements of a derivative suit, and even if it had, any suit on behalf of the NAF Subsidiaries would be barred by the settlement agreement with Hampshire in which the Subsidiaries relinquished their right to pursue any claims related to the transaction, the U.S. District Court of the Southern District of New York dismissed the suit.[7]

NAF then appealed to the U.S. Court of Appeals for the Second Circuit, arguing that *Tooley*, which involved a claim that the directors of a corporation breached their fiduciary duties, did not apply to *its* commercial contractual claim. We emphasize "its" for a reason: if, by way of example, a stockholder of Acme Corporation brought an action claiming that Acme's board of directors was wrongly failing to prosecute a claim for a breach of a contract that Acme had signed because an insider was the breaching party, that suit would need to be brought derivatively on behalf of Acme. But that is because

---

[5] *Id.*, at *4.
[6] *Id.* (quoting *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031, 1039 (Del. 2004)).
[7] *Id.*, at *10.

4

the stockholder was seeking to enforce Acme's contractual rights on the corporation's behalf, not her own individual rights.[8]

NAF also argued that requiring shareholders with commercial contract claims to sue their counterparty derivatively because the injury arose out of harm to a subsidiary would conflict with established principles of contract law, discourage stockholders from contracting on behalf of the corporation, and undermine the purposes of derivative suits. Li & Fung contended in response that the District Court correctly concluded that NAF could not bring a direct claim because NAF only sought compensation for the harm suffered by the NAF Subsidiaries. It argued that because NAF did not suffer a direct injury independent of the harm suffered by its subsidiaries, NAF's breach of contract claim had to be brought derivatively under the principles articulated in *Tooley*.

---

[8] *See, e.g.*, *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271 (Del. Ch. 2015) (plaintiff-stockholders brought derivative suit alleging that contract to which the corporation was a signatory had been breached by third parties and corporation's board of directors improperly declined to prosecute the corporation's contract claims); *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 820 (Del. Ch. 2009), *aff'd sub nom.*, *Teachers' Ret. Sys. of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011) (same); *Ishimaru v. Fung*, 2005 WL 2899680 (Del. Ch. Oct. 26, 2005) (concluding that member of LLC could press a derivative claim on LLC's behalf against third party who had breached contract with LLC because managing member of LLC was incapable of disinterestedly deciding whether to cause LLC to sue breaching third party); *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 722 (Del. 1971) (plaintiff-stockholder of subsidiary corporation brought derivative suit against parent corporation for causing a second subsidiary to breach a contract between the two subsidiaries); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 9.02[a], at 9-7 (2013) ("In other words, derivative actions are those that seek relief for injuries done to the corporation, while individual or class claims are those that seek to rectify harm inflicted directly upon the individual rights of the stockholders."); 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations*, § 13.10, at 13–24 (3d ed. Supp. 2015) ("The fundamental purpose of a derivative action is to enforce a corporate right that the corporation has refused for one reason or another to assert."); *cf. Rales v. Blasband*, 634 A.2d 927, 934 n.9 (Del. 1993) (describing demand excusal rules when "a stockholder brings a derivative suit alleging that a third party breached a contract with the corporation").

The Second Circuit expressed skepticism that *Tooley* would bar NAF's commercial contract claim,[9] but sought guidance from this Court on the proper analysis.

## III.  ANSWER TO THE CERTIFIED QUESTION

The answer to the complicated question certified to us by the U.S. Court of Appeals for the Second Circuit is that a party to a commercial contract may sue to enforce its contractual rights directly, without proceeding by way of a derivative action. *Tooley* and its progeny do not, and were never intended to, subject commercial contract actions to a derivative suit requirement.[10]  That body of case law was intended to deal

---

[9] *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 745 (2d Cir. 2014) ("There is . . . a difference between this case on the one hand and, on the other hand, *Tooley* and all the precedents reviewed by *Tooley* in its discussion.  We believe the Delaware Supreme Court might consider this difference to be significant.  The claim in *Tooley* was based on the defendants' alleged violation of fiduciary duties arising by law from the defendants' status in the corporate structure.  These are the most conventional and familiar sorts of claims involved in litigation by shareholders of the type that raises troublesome questions whether the suit is properly characterized as direct or derivative. . . .  NAF's claim is different in this respect.  Its claim is not predicated on a breach of a duty that the law imposes by reason of the defendant's affiliation with the corporation.  NAF's claim is based on a contractual duty owed directly to it by the defendant."); *see also NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 751 (2d Cir. 2014) (Lynch, J., concurring) ("Here, NAF seeks to sue not a corporate insider, but an outside party who is alleged to owe a contractual duty directly to NAF.  Unlike the typical derivative plaintiff, moreover, NAF owns 100% of the shares of the injured subsidiaries.  NAF's situation in this case is thus distinguishable from that of a disgruntled shareholder who objects that decisions of the corporation's management were made under a conflict of interest.").

[10] In fact, in determining that the *Tooley* plaintiff-stockholders did not have a direct claim, the Court noted that "the plaintiffs have no separate contractual right to bring a direct claim, and they do not assert contractual rights under the merger agreement."  845 A.2d at 1034 (quoting *Tooley v. Donaldson, Lufkin and Jenrette*, 2003 WL 203060 (Del. Ch. Jan. 21, 2003)).  In other words, the stockholder-plaintiffs might have had a viable direct claim against the board of directors for its role in reducing the value of their stock if they could show that they had a *contractual right* to payment for their stock when the drop in value occurred.  *See also Agostino v. Hicks*, 2004 WL 443987, at *7 n.54 (Del. Ch. March 11, 2004) ("Since the fiduciary duty of officers and directors runs to the corporation and the shareholder, the shareholder will always be able to assert a breach of duty owed to it, but plainly not all fiduciary duty claims are individual claims.  As such, in the context of fiduciary duty claims, the focus should be on the nature of the

6

with a different subject: determining the line between direct actions for breach of fiduciary duty suits by stockholders and derivative actions for breach of fiduciary duty suits subject to the demand excusal rules set forth in § 327 of the Delaware General Corporation Law, Court of Chancery Rule 23.1, and related case law.[11]

In concluding that NAF could proceed only by a derivative suit, the District Court focused on this Court's statement in *Tooley* that a stockholder-plaintiff is required to show that it "can prevail without showing an injury to the corporation" to bring a direct claim.[12] Li & Fung read this language as intended to be a general statement requiring all claims, whether based on a tort, contract, or statutory cause of action (*e.g.*, antitrust), to

---

injury. *In other contexts, the focus upon to whom the relevant duty is owed will allow the segregation of derivative claims.*") (internal citations omitted) (emphasis added).

[11] *See Tooley*, 845 A.2d at 1033 (considering whether plaintiff-stockholders' claim that the board of directors breached their fiduciary duties could be brought as a direct action and noting that in a recent case, "*in the context of a claim for breach of fiduciary duty*, the Chancellor articulated the inquiry as follows: 'Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?'") (citing *Agostino*, 2004 WL 443987); *NAF Holdings, LLC.*, 772 F.3d at 745 (observing that "each of the subsequent cases in which the Delaware Supreme Court has cited *Tooley* has also involved similar claims of breach of fiduciary (or like) duties that are implied by law arising out of the defendant's relationship to the corporation") (citing *Blaustein v. Lord Baltimore Capital Corp.*, 84 A.3d 954 (Del. 2014); *Ark. Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888 (Del. 2013); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012); *Brooks–McCollum v. Emerald Bd. of Dirs.*, 29 A.3d 245 (Del. 2011) (Table); *Feldman v. Cutaia*, 951 A.2d 727 (Del. 2008); *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007); *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006); *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766 (Del. 2006); *FS Parallel Fund, L.P. v. Ergen*, 879 A.2d 602 (Del. 2005) (Table)); *cf. Case Financial v. Alden*, 2009 WL 2581873, at *7 (Del. Ch. Aug. 21, 2009) (holding that the plaintiff corporation could maintain a direct claim for breach of fiduciary duty against a former director, despite the fact that the alleged damages derived from the diminution in value of the plaintiff's shares of its wholly-owned subsidiary, reasoning that, "because [the former director] owed this duty to the [plaintiff corporation] directly, [the plaintiff's] ability to pursue a suit against [the former director] directly [did] not depend . . . on whether the entirety of the damage was sustained directly by [the plaintiff] or derivatively through [the subsidiary]").

[12] *NAF Holdings LLC*, 2013 WL 489020, *6 (quoting *Tooley*, 845 A.2d 1031, 1039 (Del. 2004)).

7

be brought derivatively whenever the corporation of which the plaintiff is a stockholder suffered the alleged harm. If that was true, NAF's suit for compensation for the diminution in value of its stock in the NAF Subsidiaries could not be brought as a direct action. But in that situation, a more important initial question has to be answered: does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself? Thus, it is of course true that NAF cannot bring direct contractual claims belonging only to its subsidiaries without first proving demand futility. But that does not mean that NAF must proceed derivatively as to contract claims NAF itself possesses. Reading *Tooley* to convert direct claims belonging to a plaintiff into something belonging to another party would, we confess, be alien to our understanding of what was at stake in that case, or in the cases after *Tooley* that relied on it.[13]

The bare language cited above, in other words, was applied by the U.S. District Court for the Southern District of New York in a decontextualized manner that is inconsistent with Delaware law, which seeks to ensure freedom of contract and allow parties to enforce their bargains in our courts.[14] It is a fundamental principle of contract

---

[13] *See id.*

[14] S*ee Related Westpac LLC v. JER Snowmass LLC*, 2010 WL 2929708, at *6 (Del. Ch. July 23, 2010) ("Delaware law respects the freedom of parties in commerce to strike bargains and honors and enforces those bargains as plainly written."); *NACCO Industries, Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) ("Delaware upholds the freedom of contract and enforces as a matter of fundamental public policy the voluntary agreements of sophisticated parties."); *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059-60 (Del. Ch. 2006) ("There is . . . a strong American tradition of freedom of contract, and that tradition is especially strong in our State, which prides itself on having commercial laws that are efficient."); *Libeau v. Fox*, 880 A.2d 1049, 1057 (Del. Ch. 2005), *aff'd in pertinent part*, 892 A.2d 1068 (Del. 2006) ("[T]he wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations."); *State v. Tabasso Homes, Inc.*, 28 A.2d 248, 252 (Del. Gen. Sess. 1942) ("Of course we appreciate the fact that the

law that the parties to a contract are bound by its terms, and have a corresponding right to enforce them.[15] In addition, our law seeks to promote reliable and efficient corporate laws in order to facilitate commerce.[16] It would be inconsistent with these legal principles to subject commercial parties to a burdensome demand excusal process before allowing them to sue on their own commercial contracts.[17]

right to contract is one of the great, inalienable rights accorded to every free citizen . . . and that this freedom of contract shall not lightly be interfered with.").

[15] *See John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 34 (Del. Super. Ct. 1973), *aff'd*, 324 A.2d 208 (Del. 1974) ("[W]here, in a third party beneficiary contract, the promisor has breached its duty to perform an act for the benefit of a creditor beneficiary, the promisee—the original obligor—has a right to recover the full value of the promised performance from the promisor.");13 Williston on Contracts § 37:55 (4th ed. 2015) ("Despite the apparent difficulties caused by the promisor being potentially liable to two parties, most courts have found it simpler to allow both the promisee and the beneficiary to sue the promisor to enforce the third party beneficiary contract."); Restatement (Second) of Contracts § 305(1) (1981) ("A promise in a contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to an intended beneficiary."); *id.* cmt. a ("The promisee of a promise for the benefit of a beneficiary has the same right to performance as any other promisee, whether the promise is binding because part of a bargain, because of his reliance, or because of its formal characteristics."); 12B Fletcher Cyc. Corp. § 5911 (2014) ("General rules as to whether individual or derivative—In general: . . . If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, for example, where the action is based on a contract to which the shareholder is a party . . . it is an individual action."); *id.* at § 5911 ("General rules as to whether individual or derivative—Depreciation of value of stock: . . . Where the wrongful acts are not only wrongs against the corporation but are also violations by the wrongdoer of a duty arising from contract or otherwise and owing directly to the shareholders, individual shareholders can sue in their own right."); *cf.* 17B C.J.S. *Contracts* § 929 (2015) ("In the absence of a provision in a contract specifically stating that such contract will inure to the benefit of a third person, parties to a contract are presumed to have contracted for themselves, or their own benefit, and not for the benefit of third parties.").

[16] *See, e.g.*, *ev3, Inc. v. Lesh*, 2014 WL 8662370 (Del. Apr. 20, 2015); *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 712 (Del. Ch. 2004) (observing "Delaware law's goal of promoting reliable and efficient corporate and commercial laws"), *aff'd*, 861 A.2d 1251 (Del. 2004).

[17] *See, e.g.*, *Tooley*, 846 A.2d at 1036 (noting that determining that an action is derivative, and not direct, "has many legal consequences, some of which may have an expensive impact on the parties to the action"); Robert B. Thompson & Randall S. Thomas, *The Public and Private Faces of Derivative Lawsuits*, 57 VAND. L. REV. 1747, 1792 (2004) (presenting data to show that derivative actions are declining, likely because of procedural hurdles "such as the demand requirement and other constraints that make ultimate recovery unlikely").

We clarify that allowing NAF to press its breach of contract action directly does not in any way signal our view of the merits of that claim. Nor do we evaluate whether the settlement agreement signed by the NAF Subsidiaries affects NAF's claim, when that agreement was intended to benefit the Subsidiaries and thus NAF as the owner of their equity. It may be that the unusual characteristics of the contract at issue in this case, the creation of subsidiaries who were signatories to the merger agreement, and the subsidiaries' resolution of their dispute with Hampshire will affect the viability of NAF's breach of contract claim and its ability to prove compensable damages. But those issues relate to the merits of NAF's contract claim, and have no bearing on whether the claim itself is derivative in nature. Therefore, we simply answer the question posed by our learned friends by holding that a suit by a party to a commercial contract to enforce its own contractual rights is not a derivative action under Delaware law. The Clerk is directed to transmit this opinion to the Second Circuit.