# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

V&M AEROSPACE LLC    )
            )
    Plaintiff,    )
            )
  v.         )  C.A. NO.: N18C-09-189 AML CCLD
            )
V&M COMPANY,     )
            )
    Defendant.   )

Submitted: April 1, 2019
Decided: July 18, 2019

**Upon Defendant's Motion for Judgment on the Pleadings: Denied**
**Upon Plaintiff's Motion for Partial Summary Judgment: Granted in Part**

## MEMORANDUM OPINION

Catherine A. Gaul, Esquire, Hayley M. Lenahan, Esquire of ASHBY & GEDDES, Wilmington, Delaware and Peter L. Loh, Esquire, Davis G. Mosmeyer, III, Esquire of FOLEY & LARDNER LLP, Dallas, Texas, *Attorneys for* Plaintiff.

Robert A. Penza, Esquire, Christina M. Belitz, Esquire of POLSINELLI PC, Wilmington, Delaware and Michael Stiles, Esquire of STILESPOMEROY LLP, Pasadena, California, *Attorneys for* Defendant.

**LeGrow, J.**

The plaintiff in this action purchased all the assets of the defendant's chrome plating business except the real property on which the business was situated. Knowing the real property environmentally was contaminated, the parties included in their asset purchase agreement specific indemnification provisions governing which party would be liable for existing and future environmental contamination. The parties agreed the seller would bear responsibility for any contamination associated with the release of hazardous substances before the asset purchase, and the buyer would bear responsibility for contamination resulting from the release of hazardous substances after the purchase.[1]

Although their agreement easily is stated, the parties have met significant difficulty applying their respective indemnification rights and obligations. In litigation pending in California, the parties are disputing who bears responsibility for various cleanup and remediation efforts on the property. While that litigation proceeds, the buyer has exercised a setoff right contained in the asset purchase agreement and has reduced the interest and principal payments the buyer owes the seller by the amount of attorneys' fees and litigation costs the buyer has incurred in the litigation. The seller contends this setoff is improper, and each side has filed a motion seeking judgment in its favor.

---

[1] This summary simplifies certain nuances for the sake of a clearer explanation.

The primary question presented by both motions is whether the terms of the asset purchase agreement allow the buyer to offset payments due under the contract against losses related to "Environmental Claims," even if those losses ultimately may not be subject to indemnification under the parties' agreement. Unlike other losses, the plain language of the asset purchase agreement requires the buyer to offset its losses related to Environmental Claims without regard to the parties' ultimate indemnification obligations. Accordingly, the buyer is entitled to partial summary judgment on this issue of contractual interpretation.

## FACTS AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the pleadings and the documents incorporated by reference therein.

### The Parties' Agreement and Later Dispute

Plaintiff V&M Aerospace LLC ("Aerospace") was formed in 2015 to purchase a Los Angeles-based chrome plating business owned by Defendant V&M Company ("VMC"). On July 2, 2015, Aerospace and VMC[2] entered into an Asset Purchase Agreement (the "APA") under which Aerospace purchased all VMC's assets except the real property on which the business was situated. Shortly thereafter, the parties also executed a Promissory Note (the "Note") with a

---

[2] At the time the APA was executed, VMC was known as V&M Plating Co.

2

principal balance of $3 million. Under the Note, Aerospace agreed to pay VMC quarterly interest for five years and the $3 million principal on August 21, 2020.

At the time they entered into the APA, the parties were aware the real property on which the chrome plating facility was situated environmentally was contaminated. That environmental contamination expressly was addressed in the APA, where the parties agreed to specific indemnification provisions allocating responsibility for environmental contamination depending on when a hazardous substance was released. Specifically, VMC agreed to indemnify Aerospace for any losses associated with any release or threatened release of a hazardous substance before the APA's closing date.[3] Conversely, Aerospace agreed to indemnify VMC for any losses associated with any release or threatened release of a hazardous substance after the closing date.[4]

The parties' indemnification obligations have proved more difficult to apply than they are to summarize. In 2017, an individual filed an action against VMC in Los Angeles, California Superior Court (the "California Litigation"). The plaintiff in the California Litigation sought damages and contribution from VMC for environmental contamination at the facility. In October 2017, VMC filed its first amended cross-complaint against Aerospace in the California Litigation. The

---

[3] APA § 15(a)(iv).
[4] *Id.* §15(b)(iii).

3

amended cross-complaint seeks indemnification from Aerospace for the contamination VMC alleges Aerospace caused at the facility.[5]

After VMC filed its cross-complaint, Aerospace retained counsel and incurred attorneys' fees and consultant costs associated with the California Litigation. While the parties continued to litigate their respective clean-up obligations in California, Aerospace notified VMC in July 2018 that Aerospace intended to exercise its right to offset those attorneys' fees against the August 2018 quarterly interest payment due under the Note.[6]

**The Indemnification and Offset Rights**

This offset right arose from the APA, wherein the parties agreed that Aerospace would offset losses it incurred against payments due under the Note and the parties' other agreements. Section 17 of the APA establishes that offset right and is at the center of the parties' current dispute. The first two sentences of Section 17 define Aerospace's offset right and the priority of payments against which Aerospace must offset its losses, providing:

> Without limiting any other rights or remedies available to [Aerospace], [Aerospace] shall offset any claim for a Loss (other than Losses related to Environmental Claims) subject to indemnification

[5] The complaint in this case also refers to proceedings before the Los Angeles Regional Water Quality Control Board and a draft clean-up and abatement order that identifies Aerospace as one of the parties responsible for contamination on the site. It appears from the record, however, that Aerospace has not taken any offset relating to those proceedings and is not seeking summary judgment on that basis. *See* Aff. of Peter L. Loh, Esquire (hereinafter "Loh Aff.") Ex. 1-H; Pl.'s Mot. for Partial Summ. J. at 13, ¶ b.

[6] *See* Compl. ¶ 31; Loh Aff. ¶ 8.

pursuant to Section 15(a) by first withholding payments under the Note and/or offsetting against the principal balance of the Note and second withholding payments under the Lease if there is no remaining principal balance under the Note or [Aerospace] has offset the remaining principal balance under the Note. [Aerospace] shall offset any claim for any Loss related to Environmental Claims by first withholding payments under the Note and/or offsetting against the principal balance of the Note, second withholding payments under the Lease if there is no remaining balance under the Note or [Aerospace] has offset the remaining principal balance under the Note, and third withholding payments by [Aerospace] and Novaria under the Consulting Agreements if Buyer has withheld all payments to [VMC] under the Lease.[7]

To summarize, for all losses other than losses relating to Environmental Claims (hereinafter, "Non-Environmental Losses"), Aerospace "shall" offset losses that are "subject to indemnification pursuant to Section 15(a)" by withholding payments first under the Note and then under the Lease. As to losses relating to Environmental Claims (hereinafter, "Environmental Losses"), Aerospace "shall" withhold payments first under the Note, then under the Lease, and finally under the parties' consulting agreements. The sentence pertaining to offsetting Environmental Losses does not contain the limitation that the losses must be "subject to indemnification pursuant to Section 15(a)" of the APA.[8]

The terms "Loss" and "Environmental Claim" are defined under the APA. The APA classifies a "Loss" as including any "fee, charge, cost or expense

---

[7] APA § 17.

[8] The Note contains a similar offset provision. There is no material difference between the offset provisions in the APA and the Note, and neither party argued that the offset rights are inconsistent. As did the parties, I focus my analysis on the offset right defined in the APA.

(including the costs of attempting to avoid or in opposing the imposition thereof . . . and the fees, disbursements and expenses of attorneys, accountants and other professional advisors) . . . ."[9] "Environmental Claim" has a broad definition that includes any cause of action to recover costs or impose liability for pollution, contamination, cleanup, or the release of hazardous substances at the facility.[10]

When Aerospace notified VMC of its intent to offset the interest payment, VMC disputed Aerospace's right to offset fees and costs for the California Litigation, arguing that all offset rights under Section 17 are limited to losses subject to indemnification. VMC argued Aerospace's losses incurred defending the cross-complaint in the California Litigation were not subject to indemnification because the cross-complaint only sought to impose liability on Aerospace for contamination caused by the release of hazardous substances after the closing date. After VMC disputed the offset, Aerospace filed this action seeking a declaratory judgment that it complied with the APA by offsetting the interest payment against Aerospace's losses incurred in the California Litigation.

After filing an answer, VMC filed a motion for judgment on the pleadings. VMC urges the Court to enter judgment declaring that Aerospace may not withhold quarterly interest or principal payments for the California Litigation.[11]

---

[9] APA, Annex A.
[10] *Id.*
[11] Def.'s Mot. J. on the Pldgs. at 3.

6

VMC argued that "in the absence of a right to indemnification under Section 15(a), no right to offset arises."[12] Shortly thereafter, Aerospace filed a motion for partial summary judgment, arguing the Court should hold (i) Aerospace has the right to offset the costs associated with the California Litigation, (ii) Aerospace properly offset those costs in August 2018, and (iii) Aerospace is not in default under the APA or the Note. The parties briefed and simultaneously argued both motions.

For the reasons that follow, I conclude VMC's motion for judgment on the pleadings must be denied because Aerospace has the right to offset Environmental Losses irrespective of whether those losses are subject to indemnification. I therefore grant Aerospace's motion for summary judgment on that issue and on the issue of whether attorneys' fees are a "Loss" under the APA. I deny the balance of Aerospace's motion because factual issues preclude resolving the remaining issues at this stage of the proceedings.

## ANALYSIS

A motion for judgment on the pleadings should be granted if, when viewing the facts alleged in the pleadings and the reasonable inferences to be drawn therefrom in favor of the non-moving party, no material issue of fact exists and the movant is entitled to judgment as a matter of law.[13] Summary judgment, on the other hand, should be awarded if "the pleadings, depositions, answers to

---

[12] Def.'s Mot. J. on the Pldgs at 3.
[13] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *Meyers v. Intel Corp.*, 2015 WL 227824, at *3 (Del. Super. Jan. 15, 2015).

7

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[14] In this case, the standard of review is immaterial to resolving the primary issue before the Court.

Both parties' motions raise the issue of whether Section 17 permits Aerospace to offset Environmental Losses without regard to whether Aerospace ultimately will be entitled to indemnification from VMC for those losses. This question purely is one of contract interpretation, and neither side argues the contract is ambiguous. Therefore, whether analyzed under the pleadings-based standard or under the summary judgment standard, the question before the Court is the same: do the terms of the APA unambiguously provide Aerospace a right to offset the losses at issue in this case.[15] Interpretation of a contract is a question of law and therefore one that appropriately may be resolved on the pleadings.

When a contract's language is plain and unambiguous, a court must give its meaning binding effect.[16] The Court may not read ambiguity into a contract where none exists.[17] Rather, a court should conclude a contract is ambiguous only when its provisions reasonably are susceptible to different interpretations or may have

---

[14] Super. Ct. Civ. R. 56(c).
[15] As discussed below, factual issues remain in this case, including whether Aerospace complied with the notice requirements under Section 17 and whether the attorneys' fees incurred in the California Litigation are reasonable.
[16] *Allied Capital Corp v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).
[17] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001).

two or more different meanings.[18] "[A]mbiguity does not exist where the court can determine the meaning of a contract 'without any other guide than [] knowledge of the simple facts on which, from the nature of language in general, its meaning depends.'"[19]

### A. The APA permits Aerospace to offset Environmental Losses even if such losses may not be "subject to indemnification" under the APA.

The parties' primary dispute requires interpretation of Sections 15 and 17 of the APA and the interaction between those two sections. VMC argues Section 17 only allows offset for losses "subject to indemnification," pointing to the first sentence of Section 17, which refers to Aerospace offsetting any claim for a loss "subject to indemnification pursuant to Section 15(a)." According to VMC, the cross-complaint in the California Litigation seeks to impose liability on Aerospace only for "hazardous substances released into the environment caused by Aerospace's operations after the August 21, 2015 closing date."[20] VMC argues the cross-complaint is not one for which it must indemnify Aerospace because the cross-complaint relates to contamination Aerospace caused after closing.[21] Accordingly, VMC argues no offset right is available to Aerospace and, in fact, Aerospace owes VMC indemnification, which is what the cross-complaint seeks. Aerospace, on the other hand, relies on Section 17's second sentence, which

---

[18] *Id.*
[19] *Id.*
[20] Def.'s Mot. J. on the Pldgs. at 2.
[21] *See* APA § 15(a)(iv).

9

permits it to offset "any claim for any Loss related to Environmental Claims," and which omits the "subject to indemnification" language contained in Section 17's first sentence.

Section 17's first two sentences create two offset rights: one for Non-Environmental Losses and one for Environmental Losses. The sentences differ in two material respects. First, for Environmental Losses, Aerospace may offset payments under the Note, the lease, or the consulting agreements. For Non-Environmental Losses, however, Aerospace only may offset payments under the Note and the lease. Second, the sentence referring to Environmental Losses does not contain the phrase limiting offset to losses "subject to indemnification pursuant to Section 15(a)." That limiting phrase appears only in the first sentence referring to Non-Environmental Losses.

VMC argues the absence of the "subject to indemnification" limiting phrase in the second sentence of Section 17 is not material because the only reason for the two different sentences is to expand Aerospace's offset right for Environmental Losses to include payments due under the consulting agreements. VMC effectively argues the "subject to indemnification" limiting phrase in Section 17's first sentence implicitly is included in the second sentence, despite its conspicuous absence.

10

The parties, however, are bound by the APA's plain language, which is not ambiguous.[22] This Court may not read limitations or language into the APA that the parties' themselves did not include during drafting.[23] VMC's argument effectively asks the Court to apply only the distinction between the types of payments Aerospace may offset and requires the Court to ignore altogether the other difference between the two sentences. That interpretation is inconsistent with this Court's obligation to interpret contracts according to their plain meaning and afford meaning, wherever possible, to all the language in a contract.[24] By including the limiting phrase in the first sentence, and excluding it from the second sentence, the parties created a distinction between the scope of the two offset rights, and the Court is bound to enforce that distinction, even if it is one VMC regrets in hindsight.[25]

VMC, however, offers three reasons why the Court should read the "subject to indemnification" limiting phrase into Section 17's second sentence. First, VMC argues Aerospace's interpretation effectively would eviscerate VMC's

---

[22] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 546-47 (Del. Super. 2005) (a "contract is not rendered ambiguous simply because the parties disagree as to the meaning of its terms. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.").

[23] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 746 (Del. 1997) ("Contract interpretation that adds a limitation not found in the plain language of the contract is untenable.").

[24] *Segovia v. Equities First Holdings, LLC*, 2008 WL 2251218, at *9 (Del. Super. May 30, 2008).

[25] *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180-81 (Del. 2015); *Related Westpac LLC v. JER Snowmass LLC*, 2010 WL 2929708, at *6 (Del. Ch. July 23, 2010) ("Delaware law respects the freedom of parties in commerce to strike bargains and honors and enforces those bargains as plainly written.").

indemnification rights and would "punish VMC for pursuing its right to indemnity."[26] Second, VMC contends adopting Aerospace's interpretation runs afoul of well-established precedent that a party may not obtain indemnity for its own negligence without clear contractual language to that effect.[27] Finally, VMC argues Aerospace's interpretation of Section 17 is "novel" in the field of environmental law.

None of VMC's arguments is persuasive or consistent with Delaware law. As to VMC's assertion that Aerospace's interpretation creates an irreconcilable conflict between Sections 15 and 17 and renders VMC's indemnification rights illusory, VMC ignores the distinction between offset and indemnification rights. Aerospace's offset right essentially amounts to a preliminary self-help right when Aerospace suffers – or alleges it has suffered – certain losses. If Aerospace alleges it suffered a Non-Environmental Loss, and that loss is a type that may be subject to indemnification under Section 15(a)(i)-(iii), Aerospace is required to offset its losses against certain payments it otherwise would owe VMC. The offset right is not indemnification. Rather, offset simply affords preliminary relief while the parties resolve their indemnification obligations. If Aerospace alleges it suffered an Environmental Loss, it similarly may offset that loss against payments owed to

---

[26] Def.'s Mot. for J. on the Pldgs. at 7-8.
[27] Def.'s Reply in Support of Mot. for J. on the Pldgs. at 5.

12

VMC. The parties likewise may litigate whether Aerospace indeed suffered an Environmental Loss, and VMC could recoup any improperly offset payments.[28]

Contrary to VMC's interpretation, which effectively would allow Aerospace to offset payments only once the parties' indemnification obligations for a loss conclusively are established, Section 17 specifically contemplates that offset will occur before any final determination of the parties' indemnification obligations. Section 17 provides that Aerospace's offset of any losses will not constitute a breach of the APA, even if a court or arbitrator later determines the offset is impermissible or unjustified, unless the offset was willful or baseless.[29] This language would be superfluous if offset only was available once indemnification conclusively was resolved.[30] This preliminary right does not "eviscerate" VMC's indemnification right because any such indemnification right arises only once the parties' claims finally are resolved.[31] In the case of Environmental Losses, if the

---

[28] As explained below, the APA expressly allows VMC to recoup wrongfully-offset payments.

[29] APA § 17 ("Subject to the provisions hereof and except for instances of willful and baseless withholding, [Aerospace's] withholding and/or offset against any amounts due and payable pursuant to the Note, the Lease or the Consulting Agreement shall not constitute a breach or an event of default under this Agreement . . . regardless of whether such withholding or offset is later determined to be unjustified or impermissible in arbitration, by a court or otherwise.").

[30] That is, even for Non-Environmental Losses, Aerospace must offset the loss if it is one that would be "subject to indemnification." Aerospace need not wait a final determination as to whether a loss is subject to indemnification or the precise scope of VMC's indemnification obligation. The difference between the first two sentences is that Aerospace may offset any Environmental Loss without regard to whether it fits within Section 15(a)(iv).

[31] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009) (indemnification obligation did not ripen until final adjudication of underlying litigation); *Mine Safety Appliances Co. v. AIU Insur. Co.*, 2015 WL 5829461, at *5 (Del. Super. Aug. 10, 2015) ("It is generally premature to consider indemnification prior to the final disposition of the underlying action.").

California court ultimately concludes Aerospace is required to indemnify VMC for certain losses, VMC will be in a position to recover both the indemnification owed under Section 15 and any amounts improperly offset under Section 17.[32]

Moreover, the parties' decision not to include the "subject to indemnification" limitation for Environmental Losses was a practical one. Unlike the relatively straightforward indemnification provisions in Section 15(a)(i)-(iii), the parties' reciprocal indemnification rights and obligations for Environmental Claims are complex and nuanced. The parties likely could determine with little fanfare whether a claimed loss arguably was one subject to indemnification under Section 15(a)(i)-(iii).[33] In contrast, as this case and the California Litigation readily demonstrate, the parties are unlikely to agree at the outset whether any Environmental Claim is subject to indemnification. Interpreting Section 17 according to its plain language, without implying the "subject to indemnification" limitation in the second sentence, avoids a preliminary fight regarding the

---

[32] At oral argument, VMC argued the APA does not contain any mechanism for recouping improperly offset losses. But, as set forth above, Section 17 expressly contemplates that a court or arbitrator ultimately may determine whether an offset properly was taken. Presumably, the parties concluded that VMC could utilize existing legal mechanisms, if necessary, to resolve any such issues, without needing to set out in the APA a special procedure for adjudicating such claims.

[33] Section 15(a)(i)-(iii) requires VMC to indemnify Aerospace for (i) inaccurate representations in the APA, (ii) breach of any covenant, agreement, or obligation in the APA, and (iii) the ownership, management, or operation of the assets or the business on or before the closing date. Although VMC likely vigorously would litigate any claimed breach, it would be fairly straightforward to determine whether a complaint sought damages that, if the claim was proved, would be "subject to indemnification" and therefore eligible for offset.

14

propriety of a particular offset for an Environmental Loss and allows the parties to focus on resolving the underlying litigation on its merits.

For the same reasons, Aerospace's interpretation does not contradict the principle that a party may be indemnified for their own negligence only if the contractual language to that effect is clear and unequivocal.[34] The offset right is distinct from the parties' indemnification rights and obligations; if the rights were the same, they both would have been included within the APA's indemnification sections.[35]

Finally, at the hearing on the parties' motions, VMC argued, *ipse dixit*, that Aerospace's interpretation was novel in the area of environmental law. According to VMC, there is no opinion in the field of environmental law holding that a party suing another for indemnification would be require to advance the attorneys' fees of the party resisting indemnification. To the extent this novelty is, in fact, accurate, it is not a compelling basis to reject the APA's plain language. First, and most importantly, Delaware honors parties' freedom to contract and their ability to order their affairs by agreement.[36] Whether any other parties have negotiated a similar agreement is of little, if any, significance.[37] Second, the concept of a party

---

[34] *Am. Ins. Gp. v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 829 (Del. 2000) (citing *Precision Air, Inc. v. Standard Chlorine of Del., Inc.*, 654 A.2d 403 (Del. 1995)).
[35] APA §§ 15, 16.
[36] *See, e.g. ev3, Inc. v. Lesh*, 114 A.3d 527, 529 n.3 (Del. 2014).
[37] VMC has not cited any case in which a court rejected application of an offset right like the one at issue here.

15

accused of wrongdoing or misconduct being entitled to have their attorneys' fees advanced, often by the party who initiated the litigation, is familiar and recognized in Delaware.[38]

For all those reasons, Aerospace may offset Environmental Losses, without regard to whether those loses are "subject to indemnification." VMC retains the right to recoup previously-offset payments if it turns out VMC was not responsible for those losses, but neither the parties nor any adjudicative body need make a preliminary determination that claimed Environmental Losses are subject to indemnification.

The conclusion that Aerospace may offset Environmental Losses without regard to Section 15's indemnification provisions resolves the parties' primary dispute, but does not resolve this case entirely. Aerospace's motion for partial summary judgment also seeks judgment as a matter of law as to whether the Californial Litigation is an Environmental Claim and whether the attorneys' fees incurred in connection therewith are losses under the APA.[39]

## B. The California Litigation is an "Environmental Claim" under the APA.

The parties appear to agree that the California Litigation constitutes an Environmental Claim. In any event, the APA's definition of that phrase squarely includes the litigation at issue. An Environmental Claim includes an "action" or

---

[38] *See* 8 *Del. C.* § 145(e), (f).
[39] Pl.'s Mot. for Partial Summ. J. at 6-9.

16

"cause of action" that "seeks to recover costs related to, or seeks to impose liability regarding," among other things, pollution, contamination, and clean-up and the processing, use, storage, or disposal of hazard substances. It is undisputed that the initial California Litigation sought to impose liability on VMC for, in its words, "hazardous substances released into the environment."[40] VMC's counterclaim seeks to shift some of that liability to Aerospace.[41] The California Litigation therefore is an Environmental Claim under the APA.

### C. The reasonable attorneys' fees and expenses Aerospace incurs in the California Litigation are "Losses" as that term is defined in the APA.

VMC does not directly argue that attorneys' fees and expenses are not "Losses" under the APA, although it does argue that the fees first must be paid by Aerospace before they can be considered a loss. VMC's distinction between fees billed and fees paid, however, finds no textual support in the APA. To the contrary, the APA includes within the definition of "Loss" any "Liability."[42] The APA further defines a "Liability" as any "debt [or] obligation." Accordingly, whether or not the attorneys' fees have been paid is not relevant to their categorization as a Loss. But, as explained below, whether those attorneys' fees were reasonable is a factual issue that requires resolution at a later stage of these proceedings.

---

[40] Def.'s Mot. for J. on the Pldgs. at 2. *See, id.* ¶4 (characterizing the California Litigation as an "Environmental Claim").

[41] *Id.* at 2

[42] APA, Annex A.

17

**D. Disputed factual issues preclude summary judgment as to the remaining issues Aerospace raised in its motion.**

Finally, although Aerospace also seeks judgment in its favor that it did not breach the APA or the Note by offsetting the August 21, 2018 interest payment, factual disputes between the parties preclude summary judgment on this issue. The primary factual dispute between the parties is whether Aerospace provided the requisite degree of notice under Section 17, particularly whether the redacted attorneys' fees invoices satisfied Section 17's requirement that Aerospace provide VMC 30-days advance notice of any intent to offset a payment, including (i) a detailed explanation and itemization of the basis or bases for such offset, and (ii) giving VMC or its agents reasonable access to any documents relating to the bases for the offset. VMC contends the heavily-redacted invoices Aerospace provided did not satisfy Section 17's requirements. This issue is a factual one that the Court cannot resolve on the record presently before it. The reasonableness of those fees also may be a factual dispute to be resolved at a later date.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **DENIED** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED IN PART. IT IS SO ORDERED.**

18