# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRYAN DORSEY, derivatively on behalf of ROOTS FOODS HOLDINGS, INC. (f/k/a ROOTS FOOD GROUP HOLDINGS, INC.), ROOTS GROUP HOLDINGS, INC., ROOTS GROUP HOLDINGS LLC, and ROOTS FOOD GROUP MANAGEMENT LLC, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2024-0134-CDW |
| ROBERT T. JONES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| ROOTS FOODS HOLDINGS, INC. (f/k/a ROOTS FOOD GROUP HOLDINGS, INC.), | ) ) ) ) | |
| Nominal Defendant. | ) | |
| ROBERT T. JONES, | ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| BRYAN DORSEY, ROOTS GROUP HOLDINGS LLC, and ROOTS FOOD GROUP MANAGEMENT LLC, | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**REPORT DENYING DEFENDANT'S
MOTIONS AND RESOLVING COUNTERCLAIM
DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS**

Date Submitted:  December 29, 2025
Date Decided:  March 27, 2026

Rudolf Koch, Travis S. Hunter, Gabriela Z. Monasterio, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Counsel for Plaintiffs and Counterclaim Defendants*

Robert T. Jones, Dallas, Texas; *Defendant and Counterclaim Plaintiff Pro Se*

**WRIGHT, M.**

By the court's count, this litigation has already required the assigned judicial officers to decide 13 substantive motions, including a motion for a temporary restraining order, three motions to dismiss, two motions relating to the interpleading of disputed funds, a motion for default judgment, a motion for summary judgment, and a motion to disqualify counsel. This report resolves eight more, bringing the total to 21—most of them filed by the self-represented defendant and counterclaim plaintiff. Defendant's motions, at least some prepared using generative artificial intelligence, have failed at every turn.

That result continues with defendant's current batch of motions. Centered on a single event—a general assignment for the benefit of creditors executed by one of the plaintiffs—defendant insists that the assignee must be substituted as a party, the plaintiffs all lack standing, their pleadings must be struck from the docket, their claims dismissed, their defense against his counterclaim defaulted, and their counsel sanctioned. On the contrary, the assignment does not have the talismanic effect defendant claims—the assignment does not require substitution, the entity plaintiffs are in good standing with the Delaware Secretary of State, the individual plaintiff has standing as a derivative plaintiff, and there is no reason to reject plaintiffs' pleadings, preclude them from defending against the counterclaim, or sanction their counsel. This report recommends that all of defendant's motions be denied.

Nearly all of defendant's 13-count counterclaim meets a similar fate in this report. One count is dismissed because the court has already ruled on the issue; another is dismissed because this court cannot grant the relief it seeks; seven are dismissed because they are derivative claims and defendant does not plead the necessary elements for derivative standing; three others are dismissed because they do not plead fraud with particularity; and one half of one more is dismissed because, although it states a direct claim, it does not contain any well-pleaded allegations showing there is a reasonably conceivable basis upon which defendant could recover. This court looks at pleadings filed by self-represented litigants with forgiving eyes; it does not shut them entirely. One half of one count, pleading a statutory violation of Section 109(a) of the Delaware General Corporation Law, survives. This report recommends dismissal of the rest of the counterclaim.

## I.     BACKGROUND

As with the court's September 8, 2025 letter decision, this report dispenses with a general recitation of the facts of this case and focuses only on the alleged facts on which defendant and counterclaim plaintiff Robert Jones ("Jones") bases his latest batch of motions.

## A.     The Assignment for the Benefit of Creditors

On December 31, 2024, plaintiff and counterclaim defendant Roots Group Holdings LLC ("HoldCo") executed a general assignment for the benefit

of creditors ("ABC"), naming RFG Liquidation, LLC ("Assignee") as assignee.[1] Through the ABC, HoldCo "grant[ed], assign[ed] and transfer[red] to Assignee, in trust, for the benefit of [HoldCo]'s creditors, all of [HoldCo]'s assignable property and assets of every kind and nature, . . . whether owned by [HoldCo] or in which [HoldCo] has an interest[.]"[2]

Section 6 of the General Assignment gives Assignee "the right to institute and prosecute legal proceedings or actions in the name of [HoldCo], the same as if [HoldCo] had instituted and prosecuted such proceedings or actions."[3] Section 6 also authorizes Assignee to "defend against any action instituted against [HoldCo] and to appear on behalf of [HoldCo] in any proceedings . . . in which [HoldCo] is a party but that would be done at [HoldCo]'s sole and absolute discretion[.]"[4]

## B. The Forfeiture and Revival Events

On May 10, 2025, the State of Delaware cancelled HoldCo for "[f]ailure to appoint a [registered agent]."[5] On June 14, Roots Food Group Holdings, Inc. ("Roots") was forfeited for "[f]ailure to appoint a [registered agent]."[6] On

---

[1] *See* Dkt. 104 Ex. A ("General Assignment").

[2] *Id.* § 1.

[3] *Id.* § 6.

[4] *Id.*

[5] Dkt. 113 Ex. D.

[6] *Id.* Ex. C.

October 8, Assignee revived HoldCo.[7]  On October 27, Dorsey revived Roots.[8]  The State confirmed both entities are in good standing as of October 27.[9]

In seeming objection to this, Jones wrote to the Delaware Secretary of State, alleging that "the authority for the filing [of HoldCo's certificate of revival] is unclear" and that "only the Assignee may lawfully act on behalf of [HoldCo] following the ABC[.]"[10]  Jones asked the Delaware Division of Corporations to "[p]lace an administrative hold or notation on [HoldCo's] record indicating that the authority for the October 8, 2025 filing [of the certificate of revival] is in dispute, and . . . [p]ermit[ting] clarification of the filing attorney's authority, so that the record remains accurate while this issue is resolved."[11]  In response, on October 29, Assignee's counsel wrote to Jones, informing him that Assignee "caused the filing of the Certificate of Revival for [HoldCo] with the Delaware Secretary of State[.]"[12]

---

[7] Dkt. 136 Ex. C.

[8] *See* Pls.' Omnibus Answering Br. in Opp'n to Def.'s Mots. ("First Omnibus Br."), Dkt. 130 Ex D.  Roots changed its name from "Roots Food Group Holdings, Inc." to "Roots Foods Holdings, Inc." after Jones reserved the former name with the Delaware Division of Corporations.  *See* First Omnibus Br. Ex. C; First Omnibus Br. 5.

[9] *See* First Omnibus Br. Exs. A, B.

[10] Dkt. 136 Ex. C Ex. 2 at 1.

[11] *Id.* at 2.

[12] Dkt. 136 Ex. C.

## II.    ANALYSIS

Jones has filed eight motions since the court issued its September 8, 2025 letter report resolving eight prior motions from Jones.[13]  The court has already denied one of the new motions, so seven remain.[14]   In addition, the Counterclaim Defendants have moved for dismissal[15] of Jones' counterclaim.[16] I begin with Jones' motions.

### A.    Motion for Substitution of Parties Under Rule 25(c) (Dkt. 102)

Jones moves for "an order substituting [Assignee] . . . as the real party in interest in place of [HoldCo] . . . and Roots Food Group Management, LLC" ("OpCo").[17] Jones states that, "[o]n December 31, 2024, [HoldCo] and [OpCo] executed a General Assignment for the Benefit of Creditors . . . , pursuant to which all of their property, assets, causes of action, and rights were assigned to the Assignee[.]"[18]  Jones argues that the ABC stripped HoldCo and OpCo of "authority to prosecute, defend, or otherwise participate in litigation[,]" because "[u]nder well-settled Delaware law, once a general assignment is executed,

---

[13] *See Dorsey v. Jones*, 2025 WL 2589095 (Del. Ch. Sept. 8, 2025).

[14] *See* Dkts. 103, 105.

[15] Dkt. 85.

[16] Countercl. & Deriv. Action, Dkt. 84 ("Countercl.").

[17] Dkt. 102 at 1.

[18] *Id.*

only the Assignee may control litigation on behalf of the assignor entities."[19] Jones provides no citation for this proposition.

Jones also notes that HoldCo "is listed by the Delaware Secretary of State as 'Not in Good Standing,'" and that this "further confirm[s] their lack of capacity to sue or defend in this Court."[20] He argues that, although substitution is only permissive when a transfer of interest occurs, substitution should be mandatory here because "the Assignors no longer possess any legal authority."[21]

Plaintiffs argue that, under Rule 25(c), even where an interest has been transferred, as in an ABC, "[t]he action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named."[22] Plaintiffs note the discretionary nature of substitution under Rule 25. They cite to this court's decision in *Manubay v. Autumnwood Associates, L.P.*[23] for the proposition that "[w]here there is no transfer of an ownership of a company itself, but merely 'an ownership interest in property that once belonged to [the company], there is no

---

[19] *Id.* at 1–2.

[20] *Id.* at 2.

[21] *Id.*

[22] First Omnibus Br. 8 (citing 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1958 (3d ed. 1998) ("WRIGHT & MILLER"); *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71–72 (3d Cir. 1993)).

[23] 1997 WL 383020 (Del. Ch. June 9, 1997).

basis for maintaining that it is a successor in interest to [the company] such that it should be substituted for [the company] in this litigation."[24] Finally, plaintiffs argue that substituting Assignee for HoldCo would be immaterial because "any final judgment would be binding on [Assignee]."[25]

### 1. The ABC Does Not Requires Substitution

Plaintiffs are correct that substitution is permissive, not mandatory, under Court of Chancery Rule 25(c). Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the Court, on motion, orders the transferee to be substituted in the action or joined with the original party." Ct. Ch. R. 25(c). "A 'transfer of interest' in the corporate context takes place when one corporation becomes the successor, typically by merger, to the interest the original corporate party had in the proceeding." *First Am. Fin. Mgmt. Co. v. Royal Sovereign Grp., L.L.C.*, 2010 WL 2734226, at *1 n.1 (Del. Ch. July 9, 2010) (citing *Melton v. Bank of Lexington*, 2008 WL 867896, at *1 (W.D. Tenn. Mar. 28, 2008)).

I see no compelling reason to substitute either HoldCo or OpCo for Assignee. Jones' argument that the ABC stripped HoldCo and OpCo is unsupported by the Assignment Agreement and Rule 25(c). First, the General Assignment expressly gives Assignee the discretion—not obligation—to enter,

---

[24] First Omnibus Br. 9 (quoting *Manubay*, 1997 WL 383020, at *3).

[25] *Id*. at 10 (citing WRIGHT & MILLER § 1958).

defend, or prosecute actions on HoldCo's behalf. Additionally, OpCo is not implicated in the ABC whatsoever; HoldCo initiated the ABC and is the only plaintiff entity that is a party to the General Assignment.[26] Assignee also stated it has no intention of participating in this action.[27]

Under Rule 25(c), an action can continue against the original party despite a transfer of an interest to a successor party. Thus, even if an interest transfer did occur between HoldCo and Assignee, HoldCo can continue its participation in this action. The ABC alone does not warrant substitution of parties under Rule 25(c).

### 2. The Entity Plaintiffs are in Good Standing and Can Proceed

Jones is correct that, for a time, Roots was listed as forfeited and HoldCo was listed as cancelled.[28] But on October 27, 2025, the Delaware Secretary of State issued a certificate of good standing for both Roots and HoldCo.[29] Under Section 312 of the Delaware General Corporation Law,[30] Roots can continue in

---

[26] *See* General Assignment 1 ("This General Assignment . . . is made and entered into this 31st day of December of 2024, by and among, RFG Liquidation, LLC . . . , on the one hand, and Roots Group Holdings LLC . . . , on the other hand[.]").

[27] *See* Dkt. 104 Ex. B at 2.

[28] *See* Dkt. 113 Exs. C, D.

[29] *See* First Omnibus Br. Ex. B; *see also id.* Ex. C (name change).

[30] 8 *Del. C.* §§ 101–398 ("DGCL").

this action as a plaintiff, and Dorsey maintains his standing as a derivative plaintiff.[31]

Because it was revived, Roots' past forfeited status does not strip it of standing as a plaintiff. So, too, with Dorsey's derivative standing.[32] I deny the Motion to Substitute under Rule 25(c).

## B. Motion to Strike Plaintiffs' Opening Brief and Filing as Void (Dkt. 110)

Jones moves to strike Plaintiffs' Opening Brief in Support of Motion to Dismiss Counterclaims.[33] Essentially reasserting the arguments from his Motion for Substitution, Jones argues that striking the brief is appropriate because Roots' "forfeited its charter" and because the ABC was filed for HoldCo and OpCo. and thus none of these entities can "sue or be sued."[34] Not

---

[31] *See Paul Rivera & Kalibrr, Inc. v. Angkor Cap. Ltd.*, 2024 WL 3873050, at *9 n.90 (Del. Ch. Aug. 20, 2024) (stating revival "retroactively validate[s] *all* actions that occurred since it became void") (citing 8 *Del. C.* § 312); 8 *Del. C.* § 312(e) (revival validates "acts . . . done and performed within the scope of its certificate of incorporation by the corporation, *its directors or members of its governing body, officers, agents, and stockholders or members* during the time when its certificate of incorporation was forfeited or void pursuant to this title, with the same force and effect and to all intents and purposes *as if the certificate of incorporation had at all times remained in full force and effect.*") (emphasis added). *Cf. Neem Int'l CV v. Shulman*, 2025 WL 3778917, at *14 (Del. Ch. Dec. 31, 2025) ("Rather than proceeding on behalf of a void entity, the plaintiffs could have restored the Company's capacity by paying the past-due franchise taxes and penalties. Having not done so, Pathway remains void and the plaintiffs lack derivative standing to press claims on its behalf.") (internal citation omitted).

[32] *Cf. Neem*, 2025 WL 3778917, at *14.

[33] Dkt. 110 at 2.

[34] *Id.*

- 9 -

stopping there, Jones argues that because the entity plaintiffs cannot sue or be sued, the entire action should be dismissed because Dorsey cannot proceed in this action as a standalone, derivative plaintiff.[35] Jones argues that the opening brief is "void" and, because the briefing schedule has passed, plaintiffs are unable to file a new opening brief.[36]

This motion fails for the reasons addressed in resolving the previous motions. The entity plaintiffs were returned to good standing and can proceed in this action as plaintiffs. Dorsey can proceed as a derivative plaintiff for the same reason. I deny this motion.

## C.    Motion to Dismiss Derivative Claims (Dkt. 111)

Jones moves to dismiss the derivative claims brought against him. He rehashes his arguments from the Motion for Substitution and Motion to Strike.[37] For the reasons previously explained, Jones' forfeiture and ABC arguments fail. Dorsey is a proper derivative plaintiff,[38] and this motion is denied.

## D.    Motion for Entry of Default under Rule 55(a) (Dkt. 112)

Jones moves for entry of default judgment under Court of Chancery Rule 55(a), a non-existent rule. His argument here mirrors the argument presented in

---

[35] *Id.* at 3.

[36] *Id.*

[37] *Compare* Dkt. 111 at 2–3, *with* Dkts. 102 at 1–2, 110 at 2–3.

[38] *See supra* note 30.

the last three motions addressed. Jones argues that, because Assignee "has not appeared or defended [the counterclaim Jones filed] at all[,]" Jones is entitled to "default."[39] Jones also argues that Dorsey and OpCo needed to file individual opening briefs by the briefing deadline.[40]

I deny this motion. For the reasons previously explained, Assignee is not obligated to substitute the entity plaintiffs here. Moreover, plaintiffs often file motions collectively. This motion is unsupported by the law and is denied.

E.      Motion for Order to Show Cause Regarding Plaintiffs'
        Authority to Prosecute or Defend Claims (Dkt. 126)

Through this motion, Jones seeks "an Order requiring Plaintiffs and their counsel, Richards, Layton & Finger, P.A. [('Counsel')], to file sworn affidavits and supporting documentation demonstrating who, if anyone, has lawful authority to prosecute or defend this action."[41] Jones presents three arguments in the motion.

First, Jones argues that Assignee holds "sole discretion to 'institute and prosecute legal proceedings or actions in the name of Assignor' and to 'appear on behalf of Assignor in any proceedings,' including the decision whether to continue, defend, settle, or abandon litigation."[42] Jones asserts that, despite

---

[39] Dkt. 112 at 1.

[40] *Id*. at 3.

[41] Def.'s Mot. for Order to Show Cause Regarding Pls.' Auth. to Prosecute or Defend Claims ("Show Cause Mot."), Dkt. 126 at 1.

[42] *Id*. at 3 (citing General Assignment § 6).

- 11 -

this, Counsel "has continued litigating despite actual written notice that only the Assignee holds authority."[43]

Second, Jones states that Roots was "only a minority, non-controlling" member of HoldCo and its subsidiary, OpCo.[44] Jones argues that the Roots' lack of control over either entity means that Dorsey, a Roots stockholder, cannot sue derivatively on behalf of those entities.[45] Third, and finally, Jones argues that Counsel cannot continue to represent plaintiffs because only Assignee can continue or defend claims against the entity plaintiffs.[46]

Plaintiffs argue in turn that this motion is meritless.[47] They note that Jones' arguments are "rehashes of his prior motions."[48] For this reason, plaintiffs argue that this motion, as well as Jones' Motion to Compel and Motion for Sanctions, "should be treated as motions for reargument under Rule 59, and be denied, as they were not 'served and filed within 5 days after the filing of the Court's opinion or receipt of the Court's decision.'"[49] Alternatively, plaintiffs argue that "the Court can deny the Motion to Show

---

[43] *Id.* at 3–4 (citing Show Cause Mot. Ex. B).

[44] *Id*. at 4.

[45] *See id.*

[46] *Id.* at 5.

[47] Opp'n to Def.'s Mots. for Sanctions, to Show Cause, and to Compel ("Second Omnibus Br."), Dkt. 141 at 12.

[48] *Id*. at 12–13 (citation omitted).

[49] *Id.* at 13 (citing Ct. Ch. R. 59(f)).

Cause as another improper motion to compel documents which Jones has not actually requested."[50]

Specifically addressing Jones' arguments supporting this motion, plaintiffs again maintain that "[Roots'] forfeiture does not make its actions void, as it has been properly revived."[51] They next argue derivative standing is present here because plaintiffs "are suing Jones for recovery of potentially *millions* in damages Jones caused . . . through his breaches of fiduciary duty," which is "certainly an economic interest befitting a derivative claim."[52] Touching on their previous arguments, plaintiffs again argue that OpCo's interests "were not transferred such that [Assignee] may intervene or replace it[.]"[53]

As explained, plaintiffs are correct that Assignee need not replace any of them in this action and that plaintiffs possess proper standing to proceed. There is no basis to rule in favor of Jones' request that plaintiffs and their counsel "file sworn affidavits and supporting documentation demonstrating who, if anyone, has lawful authority to prosecute or defend this action."[54]

---

[50] *Id*. (citation omitted).

[51] *Id*. at 13–14 (citing Dkt. 130; *Paul Rivera*, 2024 WL 3873050, at *9 n.90).

[52] *Id*. at 14 (citing *Blaustein v. Lord Balt. Cap. Corp.*, 2013 WL 1810956, at *18 (Del. Ch. Apr. 30, 2013), *aff'd*, 84 A.3d 954 (Del. 2014)).

[53] *Id.* (citing Dkt. 126 Ex. B).

[54] Show Cause Mot. 1.

Additionally, Dorsey is only acting as a derivative plaintiff on behalf of Roots, not HoldCo and OpCo.[55] I deny this motion.

## F. Motion to Compel Identification of Privilege Holders and Litigation Authority (Dkt. 129)

Through this motion, Jones "does not seek a privilege log[;]" instead, Jones "seeks only identification of the holder of privilege and authority to litigate, which is a threshold question of standing and jurisdiction, not merits or discovery."[56] Jones asserts that Counsel "is litigating in the name of entities without identifying who directed them to do so."[57] Jones supports this request with case law that appears to have been hallucinated by generative artificial intelligence, which the court addressed in its December 16, 2025 letter and accompanying order to the parties.[58]

Relatedly, on October 29, Jones wrote to Counsel and requested a "privilege log."[59] The letter requests a privilege log under Court of Chancery Rule 26(b)(5), a rule that does not exist.[60] The letter states the request is made

---

[55] *See, e.g.*, Verified Am. Compl. for Breach of Fiduciary Duty, Unjust Enrichment, and Conversion, Dkt. 20 ¶ 91.

[56] Def.'s Mot. to Compel Identification of Privilege Holder and Litig. Auth. ("Mot. to Compel"), Dkt. 129 at 1–2.

[57] *Id*. at 3.

[58] *See* Dkts. 139–40.

[59] Mot. to Compel Ex. A.

[60] *Id*. at 2.

"in connection with" Jones' Show Cause Motion.[61]   There, Jones asked the court to order plaintiffs' production of numerous categories of documents.[62] The October 29 letter requests from Counsel a privilege log that includes "communications between [Counsel]" and 11 other parties, including five other law firms.[63]   Counsel rejected Jones' request.[64]

Jones is using the term "privilege" both in the attorney-client privilege sense and in the "privilege to litigate" sense.[65]   To the extent Jones' motion to compel production of a privilege log is sought in connection with the Show Cause Motion's requested relief, the motion to compel is denied because the Show Cause Motion is denied.   To the extent the privilege log is a standalone request, the motion is denied because a privilege log follows an assertion of privilege in response to a discovery request.[66]   To the extent the motion to

---

[61] *Id.* at 1.

[62] Show Cause Mot. 9 (requests for supporting documents for categories including (1) "corporate resolutions or documents establishing such authority at the time of initial appearance of RLF"; (2) "the source(s) of payment for RLF's representation;" (3) "the person or entity that paid the Delaware franchise tax and revival fees (approximately $142,000) for [Roots'] revival, and . . . documentation of that payment").

[63] Mot. to Compel Ex. A at 3.

[64] *Id*. Ex. B.

[65] *See* Mot. to Compel 1 (requesting identification of "the person(s) or entity(ies) who presently hold and control attorney client privilege" and also "the person(s) who authorized the initiation and continuation of this litigation in their names").

[66] *See, e.g.*, *In re ExamWorks, Inc. S'holder Appraisal Litig.*, 2018 WL 1008439, at *12 (Del. Ch. Feb. 21, 2018) ("The privilege log enables the party that *requested documents* to evaluate the producing party's *claim of privilege.*") (emphasis added).

compel seeks an order compelling Counsel's disclosure of who "authorized" them to initiate and continue this litigation, the motion is again denied.

This specific request is based upon Jones' mistaken assumption that the ABC strips HoldCo of its standing and that the revival event does not cure any defects in same.[67] Because Roots and HoldCo are in good standing and their revival ratified the actions taken that preceded the revival, *i.e.*, their continued participation in this action, Jones' suspicions are baseless. Additionally, the October 29 letter only requests a privilege log accompanying plaintiffs' potential production of documents. Jones' new request for the identities of who "authorized and directs [Counsel] to prosecute or defend this litigation in their names" was never made in the October 29 letter. Motions to compel discovery, as here, are predicated on a failure to answer or respond to a discovery request or a failure to abide by an earlier court order regarding discovery.[68] There was no discovery request for these specific "authorization" materials, so the motion to compel is also denied on this basis.

---

[67] Mot. to Compel 2 ("[HoldCo] and [OpCo] were assigned to [Assignee] under a California Assignment for the Benefit of Creditors on December 31, 2024. * * * RLF's October 27, 2025 correspondence confirms that RLF does not represent RFG Liquidation LLC, the assignee that holds legal control over those entities. * * * [Roots] was forfeited on June 14, 2025 and revived on October 27, 2025 after Defendant filed counterclaims. * * * Plaintiff Dorsey is a named Defendant in this case and others, and cannot control corporate privilege as an adverse litigant. * * * Thus, the core issue is: * * * Who, if anyone, authorized and directs RLF to file pleadings and assert claims in the names of these entities?")

[68] *See, e.g.*, Ct. Ch. R. 37(a)(2), (b).

## G.     Motion for Sanctions Under Rule 11(b) (Dkt. 136)

Through this motion, Jones seeks sanctions against Counsel, Dorsey, and 10 unidentified "John Doe" individuals.[69]  Jones argues that the ABC removed plaintiffs' standing in this action,[70] and that the entity plaintiffs' revival was executed by an attorney that represents the "Chapter 7 Trustee" in a bankruptcy proceeding where an entity allegedly owned by Assignee is a creditor.[71]  Jones requests various relief, including a declaration that Assignee is the real party of interest under Rule 25(c) and a referral of this matter to "disciplinary authorities" to investigate Dorsey and Counsel's conduct.[72]

Plaintiffs present multiple arguments against this motion.  First, plaintiffs argue that "the Rule 11 Motion that Jones served on [p]laintiffs was a completely different motion than what he filed with the Court."[73]  Plaintiffs argue that they "were not afforded the twenty-one-day period that the Rule requires to review the motion and take corrective action."[74]  Second, plaintiffs rebut Jones' argument regarding plaintiffs' lack of standing.  They again argue that Roots' return to good standing means that Dorsey has retained "continuous

---

[69] Def.'s Mot. for Sanctions under Rule 11(b) ("Mot. for Sanctions"), Dkt. 136 at 1.

[70] *See id*. at 2–5, 10.

[71] *See id.* at 3, 9.

[72] *See id*. at 1.

[73] Second Omnibus Br. 6.

[74] *Id.* (citing Ct. Ch. R. 11).

ownership of his shares" in Roots, so that "he retains standing to pursue derivative action on its behalf."[75] They next point to federal and Delaware authority for the proposition that actions can continue against an original entity and bind its successor, and therefore "[t]he fact that [the entity] no longer exists as a distinct entity is of little consequence' when entering a judgment for or against it[.]"[76]

I agree with plaintiffs' first argument. Under Rule 11, a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the Court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the Court sets." Ct. Ch. R. 11(c)(2). Jones makes no representation that he abided by Rule 11's 21-day curative period. The "Safe Harbor" Jones sent to plaintiffs' counsel is not his Rule 11 Motion.[77] Accordingly, Jones failed to abide by Rule 11(c)'s 21-day curative period.[78] The motion is denied on this basis.

---

[75] *Id.* at 7.

[76] *Id*. at 9 (citations omitted).

[77] *Compare* Mot. for Sanctions, *with id.* Ex. D.

[78] *See Magna-D Glob. Healthcare No. 1 Priv. Equity Fund v. Colmmune, Inc.*, 2025 WL 1568186, at *4 (Del. Ch. June 3, 2025) ("The Plaintiff did not serve the motion on the Defendant before filing it with the Court. The Defendant, thus, did not have the 21-day corrective period provided in Rule 11(c)(2) . . . . I decline to disregard the procedural, safe harbor requirements of Rule 11. The Plaintiff's failure to provide the required notice and wait the curative period renders the application under Rule 11 misplaced and unripe.").

## H. Plaintiffs' Motion to Dismiss Jones' Counterclaim

Jones filed a 13-count counterclaim against Dorsey, HoldCo, and OpCo ("Counterclaim Defendants").[79] The court addresses them below, out of order.

### 1. The Law of the Case Claim (Count IV)

Count IV of the counterclaim is entitled "REQUEST FOR COURT TO SECURE INTERPLEADED FUNDS." This court previously denied Jones' request for interpleader.[80] The ruling is law of the case, so it "will not be disturbed by th[e] court unless compelling reason to do so appears."[81] Departures from the law-of-the-case doctrine are "rare" and generally require "a showing of clear error, injustice, or a change in circumstances."[82] What facts the counterclaim does plead do not establish any clear error, injustice, or change in circumstances that would justify departing from the law-of-the-case

---

[79] *See generally* Countercl. & Deriv. Action, Dkt. 84 ("Countercl."). There are 13 numbered counts in the counterclaim, but Count I is a mashup of two claims alleging violations of Sections 271 and 109 of the DGCL.

[80] *See Dorsey v. Jones*, 2025 WL 2589095, at *5 (Del. Ch. Sept. 8, 2025) ("The upshot of all this activity—including Jones' representations—is that Jones understood and agreed he would no longer be able to assert control over the funds in the JPMorgan Chase account. This interpleader motion is inconsistent with that activity, and the court will not entertain Jones' requests regarding JPMorgan Chase's interpleader any further."). Jones filed the counterclaim before the court issued the September 8 letter decision.

[81] *Sciabacucchi v. Malone*, 2021 WL 3662394, at *4 (Del. Ch. Aug. 18, 2021) (quoting *Guy v. State*, 913 A.2d 558, 562 n.2 (Del. 2006); *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept. 23, 1994)).

[82] *Id.* (citations omitted).

- 19 -

doctrine, so Count IV must be dismissed for the reasons the court explained in its September 8, 2025 letter decision.

### 2. The Subject Matter Jurisdiction Claim (Count XII)

Count XII purports to assert a standalone claim for punitive damages.[83] Punitive damages "are not available in the Court of Chancery."[84] Count XII must be dismissed for lack of subject matter jurisdiction under Court of Chancery Rule 12(b)(1).[85]

### 3. The Derivative Claims (Counts II, III, V, VII, X, XI, and XIII)

Jones characterizes the counterclaim as presenting both direct and derivative causes of action, but does not specify which counts are derivative and which are direct.[86] Under *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, determining whether a claim is direct or derivative requires the court to answer two questions: "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" 845 A.2d 1031, 1035 (Del. 2004). "In making this assessment,

---

[83] Countercl. ¶¶ 51–52.

[84] *Carlson v. Rodriguez*, 2026 WL 183378, at *2 (Del. Ch. Jan. 22, 2026); *see also Read v. Del. Camera Club*, 1980 WL 6410, at *2 (Del. Ch. 1980) ("[A] court of equity such as this does not grant punitive damages.").

[85] *See Touch of It. Salumeria & Pasticceria, LLC v. Bascio*, 2014 WL 108895, at *8 (Del. Ch. Jan. 13, 2014) (dismissing punitive damages as a remedy because "this Court has only that jurisdiction enjoyed by the English Court of Chancery in 1776, as supplemented by the General Assembly, and neither source permits the Court to award exemplary or punitive damages").

[86] Countercl. at 1.

I must examine the 'body of the complaint and consider[] the nature of the wrong alleged and the relief requested.' If the plaintiff 'can prevail without showing an injury to the corporation[,]' then the claim is direct. If it cannot, then the claim is derivative." *In re New Media Invs. II, LLC*, 2026 WL 208698, at *4 (Del. Ch. Jan. 27, 2026) (citations omitted).

Jones begins the counterclaim with general allegations. Jones alleges that the Counterclaim Defendants have taken wrongful actions, "including bylaw amendments, improper asset transfers and fraudulent financial transactions," and that the Counterclaim Defendants "have caused significant harm to [Roots], depriving it of its rightful assets and stripping shareholders of their legal protections."[87] Jones alleges that he "seeks to unwind these fraudulent transactions, restore corporate governance protections, and hold all responsible parties accountable for irreparable harm caused to [Roots] and shareholders."[88]

Jones also alleges that Dorsey "unilaterally amended Section 7.6 of [Roots'] Bylaws to remove the rights of shareholders to adopt, amend, or repeal bylaws, consolidating absolute control over corporate governance in the Board

---

[87] *Id.* ¶ 2.
[88] *Id.* ¶ 3.

of Directors[.]"[89]  Jones alleges that "Dorsey engaged in self-dealing and knowingly violated [Roots'] governance protections[.]"[90]

The general allegations support a finding that many, but not all, of the counts in the counterclaim are derivative.  They expressly refer to damage to Roots and, as alleged, "[a]ny injury borne by the [stockholders] is indirect, resulting 'only because of their [interest]' in [Roots] and harms otherwise inflicted upon it."  *Id.* at *5 (quoting *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 819 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006)).  The specific causes of action asserted do not veer far from the counterclaim's general allegations.

### a.    Count II

Count II, a breach of fiduciary duty claim, alleges that Counterclaim Defendants breached their fiduciary duties of loyalty and care owed to Roots and its stockholders.[91]  Count II further alleges that Counterclaim Defendants took actions "at the expense of [Roots] and its [stockholders]."[92]  Count II requests "appropriate equitable and monetary relief."  Count II is derivative because it alleges damage against Roots and damage to stockholders that only stems from their interest in Roots.

---

[89] *Id.* ¶ 7.

[90] *Id.* ¶ 13.

[91] *Id.* ¶ 21.

[92] *Id.* ¶ 22.

### b. Count III

Count III is a claim of "Corporate Waste & Unjust Enrichment."[93]  It alleges that Counterclaim Defendants engaged in corporate waste and that the alleged fraudulent transactions unjustly enriched them "at the expense of [Roots] and its [stockholders]."[94]  Count III seeks an order of "full restitution of all misappropriated funds and assets and disgorgement of any benefits derived from the wrongful transactions."[95]  "Waste claims are 'classically derivative' because squandering corporate assets injures the entity directly and the investors directly." *Id.* (quoting *J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 771 (Del. 2006)).  As alleged, Count III follows that script and is thus derivative.

### c. Count V

Count V is a claim of civil conspiracy.[96]  "Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong." *Blue v. Fireman*, 2022 WL 593899, at *15 (Del. Ch. Feb. 28, 2022) (quoting *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009)).  Count V alleges that Counterclaim Defendants "conspired to unlawfully strip [Roots] of its assets, entrench themselves in positions of control, and eliminate shareholder

---

[93] *Id.* ¶¶ 24–26.

[94] *Id.* ¶ 25.

[95] *Id.*

[96] *Id.* ¶¶ 30–32.

protections to facilitate their fraudulent transactions."[97]  Count V specifies the specific "coordinated actions" that the Counterclaim Defendants took; these include "governance manipulations, financial misconduct, and fraudulent loan agreements[.]"[98]  Thus, the underlying wrongs that predicate Count V are based on alleged damage to the corporation and only indirect harm to its stockholders. Count V is accordingly derivative.

### d.  Count VII

Count VII asserts a claim for aiding and abetting "fraud and breach of fiduciary duty."[99]  It alleges that certain Counterclaim Defendants "aided and abetted, and concealed Dorsey's misconduct, ensuring that fraudulent transactions were executed while circumventing shareholder rights."[100]  Count VII calls back to Count II, the breach of fiduciary duty claim, by alleging that "[t]he fraudulent acts of [Counterclaim Defendants] were integral in allowing the improper governance amendments, financial misconduct, and self-enrichment to continue unchecked."[101]

"Prior decisions of this court have validated the unsurprising proposition that an aiding and abetting claim premised on a derivative cause of action is

---

[97] *Id.* ¶ 30.

[98] *Id.* ¶ 31.

[99] *Id.* ¶¶ 35–37.

[100] *Id.* ¶ 35.

[101] *Id.* ¶ 36.  *Compare id.*, *with id.* ¶ 22.

necessarily derivative itself." *Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *13 (Del. Ch. Jan. 25, 2019) (quoting *Feldman v. Cutaia*, 956 A.2d 644, 662 (Del. Ch. 2007)).  Count VII is an aiding and abetting claim premised on a derivative action and is, thus, "necessarily derivative itself."

### e.     Count X

Count X is a claim of unjust enrichment and restitution.[102]  It alleges that Counterclaim Defendants "fraudulently structur[ed] self-serving transactions, us[ed] company funds for personal defense, and eliminat[ed] shareholder rights[.]"[103]  Count X seeks "restitution and [a] return of all misappropriated funds and assets."[104]  Pleaded similarly as Count IX, Count X is derivative because it alleges direct harm to Roots and the benefit of relief would flow to the corporation.[105]

---

[102] *Id.* ¶¶ 42–43.

[103] *Id.* ¶ 42.

[104] *Id.* ¶ 43.

[105] *Cf. Reith v. Lichtenstein*, 2019 WL 2714065, at *21 (Del. Ch. June 28, 2019) ("Plaintiff alleges the same 'grossly unfair' terms of the Preferred Stock and 'unauthorized financial benefits' from the Equity Grants, as its breach of fiduciary duty claims.  I therefore reach the same conclusion as I did for the breach of fiduciary duty claim:  Plaintiff's unjust enrichment claim is derivative under *Tooley*.") (citing *Reiter v. Fairbank*, 2016 WL 6081823, at *14 (Del. Ch. Oct. 18, 2016); *Metro. Life Ins. Co. v. Tremont Grp. Hldgs., Inc.*, 2012 WL 6632681, at *9 (Del. Ch. Dec. 20, 2012); *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *23–24 (Del. Ch. May 5, 2010)).

### f.    Count XI

Count XI asserts a claim of tortious interference with business relations.[106]  True to name, it alleges that Counterclaim Defendants tortiously interfered with Roots' business relations.[107]  Count XI alleges that, "[a]s a direct and proximate result of these unlawful actions, [Roots] suffered significant financial losses, including lost investment capital, missed business opportunities, and reputational damage."[108]  Count XI seeks damages and issuance of "an injunction preventing further interference in [Roots'] business affairs."[109]  Count XI is derivative because it alleges direct harm to Roots and seeks relief that would flow to Roots.

### g.    Count XIII

Count XIII asserts a claim of misappropriation of Roots' funds.[110]  It states that the alleged misappropriation "constitutes corporate waste and further breaches of fiduciary duty," and warrants "immediate court intervention to freeze any further expenditure [of Roots' funds]."[111]  Count XIII is derivative because it alleges injury to the corporation and the relief requested would flow to the corporation.

---

[106] Countercl. ¶¶ 44–50.

[107] *See id*. ¶¶ 44–47.

[108] *Id.* ¶ 49.

[109] *Id.* ¶ 50.

[110] *Id*. ¶¶ 53–57.

[111] *Id.* ¶ 56.

*     *     *

In sum, under *Tooley*, counts II, III, V, VII, X, XI, and XIII are derivative claims. Plaintiffs argue that the derivative counts of the counterclaim "should be dismissed for failure to adhere to the pleading requirements in Rule 23.1."[112] I agree. The derivative counts must be dismissed because Jones (1) failed to adequately plead his derivative standing; and (2) pleaded no facts pertaining to a demand made to Roots or the futility of such a demand.

Section 327 of the Delaware General Corporation law specifies the requirement for derivative standing. It states that a derivative plaintiff shall "aver[] in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law." 10 *Del. C.* § 327. "Court of Chancery Rule 23.1 implements Section 327 procedurally by requiring that a stockholder plaintiff plead compliance with the statute." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 178 (Del. Ch. 2024).

---

[112] Opening Br. in Supp. of Pls./Countercl. Defs.' Mot. to Dismiss Countercls. ("Countercl. Opening Br."), Dkt. 108 at 8.

Rule 23.1(a) pertinently states that a derivative plaintiff[113] must "allege facts supporting a reasonable inference that the derivative plaintiff has standing to sue derivatively under the law governing the entity."  Ct. Ch. R. 23.1(a). Rule 23.1 requires a stockholder plaintiff to "allege that the plaintiff was a shareholder . . . at the time of the transaction of which the plaintiff complains or that the plaintiff's shares . . . devolved on the plaintiff by operation of law." *Id.* Moreover, Rule 23.1 "implements the substantive requirements of demand futility and demand refusal as pleading requirements by providing that '[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.'" *Quadrant*, 102 A.3d at 181 (quoting Ct. Ch. R. 23.1(a)).  The counterclaim fails to satisfy these requirements.

First, the counterclaim merely alleges Jones' ownership in passing, and without placing any sort of temporal qualification upon it.  The counterclaim only alleges that Jones "has standing to bring this action both individually and derivatively on behalf of [Roots], as the challenged actions have caused direct harm to him as a shareholder and to [Roots] as a whole."[114]  This statement neither establishes nor alleges that Jones "was a stockholder of the corporation

---

[113] A counterclaim plaintiff can plead derivative claims.  *See, e.g., JER Hudson GP XXI LLC v. DLE Invs., LP*, 275 A.3d 755, 781 (Del. Ch. 2022).

[114] Countercl. ¶ 6.

at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law." The derivative counts accordingly fail to satisfy Rule 23.1.

Second, Jones has pleaded no facts relating to his making of a demand or explaining why demand would be futile. No reasonable inference can be drawn, then, in either direction. Accordingly, the derivative counts fail to comply with Rule 23.1 on this basis also. For all these reasons, the derivative counts of the counterclaim—Counts II–III, V, VII, X–XI, and XIII—must be dismissed.

### 4. The Fraud-Based Claims (Counts VI, VIII, and IX)

Seven counts asserted in the counterclaim—Counts III, V, VI, VII, VIII, IX, and X—appear to be fraud-based, as they refer, albeit in vague and conclusory fashion, to purportedly fraudulent actions by Counterclaim Defendants.[115] Counts III, V, VII, and X are, for the reasons discussed in Part II.H.3. of this report, clearly derivative claims for which Jones has failed to plead derivative standing. The court therefore limits discussion in this section to Counts VI, VIII, and IX.

---

[115] *See id.* ¶¶ 24 (Count III) ("by approving fraudulent transactions"), 31 (Count V) ("fraudulent loan agreements"), 33 (Count VI) ("engaged in fraudulent transfers"), 35 (Count VII) ("fraudulent transactions"), 38 (Count VIII) ("wrongful conduct . . . with the intent to mislead shareholders"); 40 (Count IX) ("fraudulent indemnifications, fraudulent transactions, and the fraudulent Assignment for the Benefit of Creditors"); 42 (Count X) ("fraudulently structure[d] transactions").

### a. Count VI

Count VI asserts a claim for fraudulent transfer.[116] It alleges that Counterclaim Defendants "knowingly and intentionally engaged in fraudulent transfers, including the transfer of [Roots'] assets into newly formed entities designed to shield those assets from creditors and shareholders."[117] It further alleges that "[t]hese fraudulent transfers were executed without consideration and were designed to unjustly benefit [Counterclaim Defendants] while leaving [Roots] insolvent."[118]

Whether Count VI states a derivative or a direct claim is not entirely clear. It should be a direct claim. "[T]he law of fraudulent conveyance exists specifically to protect creditors." *Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 774 (Del. Ch. 2004). Accordingly, "[f]raudulent transfer claims are direct, not derivative, because the creditors suffered the harm caused by the fraudulent transfer, and the remedy benefits the creditors, not the business entity." *In re FairPoint Ins. Coverage Appeals*, 311 A.3d 760, 768 (Del. 2023) (citing *Prod. Resources Grp.*, 863 A.2d at 774). But Jones seems to plead it as a derivative claim, asking the court to "unwind all fraudulent transfers and restore [Roots'] rightful assets."[119] As a direct claim, Count VI would fail to

---

[116] *Id*. ¶¶ 33–34. There are two paragraphs 33.

[117] *Id*. ¶ 32.

[118] *Id*. ¶ 33.

[119] *Id*. ¶ 34.

state a claim because Jones does not plead he is a creditor and thus cannot plead a direct injury. And as a derivative claim, Count VI would fail to state a claim for the same reason as Jones' other derivative claims—a complete failure to plead derivative standing.

But the court need not resolve that issue because Count VI asserts a claim for intentional fraud. Under Court of Chancery Rule 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud[.]" Ct. Ch. R. 9(b). "Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim." *Abry P'rs V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). This applies both to claims for common law fraud and claims for intentional (as opposed to constructive) fraudulent transfer. The counterclaim manifestly fails to meet this heightened pleading standard so Count VI (and other fraud-based counts) must be dismissed.

### b. Count VIII

Count VIII purports to assert a claim for constructive fraud.[120] It alleges Counterclaim Defendants "engaged in wrongful conduct that, while appearing legitimate, was executed with the intent to mislead shareholders and avoid regulatory scrutiny."[121] It asks the court to "exercise its equitable powers to

---

[120] *Id*. ¶¶ 38–39.

[121] *Id.* ¶ 38.

rescind all unlawful transactions and restore full shareholder rights."[122] As pleaded, Count VIII alleges that Counterclaim Defendants defrauded stockholders, generally, as well as some undefined regulatory body.[123]

Whether Count VIII states a derivative or a direct claim is unclear because it is so threadbare as to be unintelligible. But the court need not resolve that question because Count VIII, like Count VI, asserts a claim for intentional fraud. Count VIII alleges (vaguely) that Counterclaim Defendants engaged in unspecified "wrongful conduct" as part of a scheme (*i.e.*, "executed with the intent to mislead shareholders and avoid regulatory scrutiny").[124] So Count VIII must be dismissed for the same fraud-based reason as Count VI— failure to meet Rule 9(b)'s heightened pleading standard.

### c. Count IX

Count IX is a claim of fraudulent concealment.[125] It alleges (vaguely, once again) that Counterclaim Defendants "actively concealed material facts from shareholders, including but not limited to the governance changes, fraudulent indemnifications, fraudulent transactions, and the fraudulent

---

[122] *Id.* ¶ 39.

[123] *Id.* ¶ 38.

[124] Jones denominates Count VIII as a "constructive fraud" claim, but that does not make it so. Constructive fraud is "[u]nintentional deception or misrepresentation that causes injury to another." *Constructive Fraud*, BLACK'S LAW DICTIONARY (12th ed. 2024). What Jones alleges is not "unintentional."

[125] Countercl. ¶¶ 40–41.

Assignment for the Benefit of Creditors."[126]  It requests "disgorgement of ill-gotten gains and invalidation of concealed agreements."[127]  Because it is another fraud-based claim, Count IX must be dismissed because the counterclaim fails to meet Rule 9(b)'s heightened pleading standard.[128]

### 5.   The Stockholder Rights Claim (Count I)

The final count to resolve is Count I.  It seeks a declaratory judgment that Counterclaim Defendants violated Sections 271 and 109 of the DGCL by transferring assets without stockholder approval ("Section 271 Claim") and "unlawfully amending [Roots'] bylaws" ("Section 109 Claim").[129]  Count I further alleges that those "actions deprived shareholders of their legal rights and led to self-dealing transactions that unfairly benefited the [Counterclaim Defendants] at the expense of [Roots]."[130]  Count I's request for relief is that the court "declare all such transactions void *ab initio* and restore shareholder rights."[131]  Because the two halves of Count I involve two difference sections of

---

[126] *Id.* ¶ 40.

[127] *Id.* ¶ 41.

[128] Count IX could also be dismissed because "fraudulent concealment" is a tolling doctrine, not an independent cause of action.  *See Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 176 (Del. Super. 1986) ("A defendant's fraudulent concealment of a cause of action may toll the statute of limitations.") (footnote omitted).

[129] Countercl. ¶ 18.

[130] *Id.* ¶ 19.

[131] *Id.* ¶ 20.

the DGCL and different allegations in the counterclaim, I deal with them separately.

### a. The Section 271 Claim

Counterclaim Defendants suggest Count I is a derivative claim,[132] but this is wrong, for both halves of Count I. Statutory provisions under the DGCL that confer a right to vote on stockholders are a "classic example" of a direct claim. *Neem Int'l CV v. Shulman*, 2025 WL 3778917, at \*15 n.224 (Del. Ch. Dec. 31, 2025) (citing *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1049–50 (Del. Ch. 2015)). The "voting right belongs to the stockholders individually—not to the corporation." *Id.* A Section 271 claim based on the failure to seek and obtain stockholder approval of a transaction involving the sale, lease, or exchange of all or substantially all of the corporation's assets[133] is a direct claim because "[t]he alleged harm is the stockholders' disenfranchisement by depriving them of their statutory right to approve or disapprove of a qualifying asset sale." *Id.*

But even as a direct claim, the Section 271 Claim must be dismissed. The counterclaim does not allege, even in conclusory fashion, that any of the transactions about which Jones vaguely complains were a sale, lease, or exchange of "all or substantially all" of Roots' assets. The counterclaim does

---

[132] *See* Countercl. Opening Br. 8 n.3.

[133] *See* 8 *Del. C.* § 271.

- 34 -

not sufficiently plead, even under Court of Chancery Rule 8's generous notice pleading standard, the most basic elements needed to state a claim under Section 271. Jones does not identify the transactions, what kind of transactions they were, or when they happened, nor does he identify what assets were involved in those transactions or the value of those assets in relation to Roots' overall asset base.[134] Without such information, the court cannot assess whether there is even a reasonably conceivable basis to think that "the quantitative and qualitative importance of the transaction[s] at issue"[135] might be such that the transactions "strike at the heart of the corporate existence and purpose"[136] and thus required a stockholder vote under Section 271. The first half of Count I, the Section 271 Claim, should therefore be dismissed.

### b. The Section 109 Claim

As with the Section 271 Claim, I find that Counterclaim Defendants are incorrect to suggest that the Section 109 Claim is a derivative claim.[137] Jones' argument for the Section 109 Claim is that Counterclaim Defendants violated

---

[134] The 11 exhibits attached to the counterclaim, all of which the court reviewed, are no help. None of them identifies any transaction that alone, or together with other identified transactions, would constitute the sale, lease, or exchange of all or substantially all of Roots' assets. In fact, the exhibits identify only one specific transaction, a purported loan for $600,000 in which Roots was the borrower. *See* Countercl. Ex. E.

[135] *Neem*, 2025 WL 3778917, at *15 (quoting *Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 379 (Del. Ch. 2004)).

[136] *Id.* (cleaned up).

[137] *See* Countercl. Opening Br. 8 n.3.

Section 109 of the DGCL by purporting to amend Roots' bylaws to deny Roots' stockholders any ability to alter or amend those bylaws.[138] This clearly strikes at an important, statutory stockholder right—the ability to change the bylaws[139]—and thus works a direct injury on Roots' stockholders.[140]

But, unlike the Section 271 Claim, I conclude the Section 109 Claim alleges facts demonstrating a reasonably conceivable claim that Section 109 of the DGCL was violated. According to Jones, prior to the challenged amendment Section 7.6 of Roots' bylaws stated:

> These bylaws may be amended or repealed, and new bylaws adopted, by the Board of Directors. The stockholders entitled to vote, however, retain the right to adopt additional bylaws and may amend or repeal any bylaw whether or not adopted by them.[141]

---

[138] Countercl. ¶¶ 7 ("Dorsey unilaterally amended Section 7.6 of [Roots'] Bylaws to remove the rights of shareholders to adopt, amend, or repeal bylaws, consolidating absolute control over corporate governance in the Board of Directors and concealed this from all shareholders."), 9 ("This change stripped shareholders of their statutory and contractual rights, violating Delaware General Corporation Law (DGCL) § 109(a), which reserves the power to amend bylaws to shareholders unless otherwise explicitly stated in the certificate of incorporation.").

[139] *See* DAVID A. DREXLER, ET AL., DELAWARE CORPORATION LAW & PRACTICE § 9.02 (2025) (examining historical practice and explaining "[t]he right to adopt, amend or repeal bylaws had generally been considered by most general Delaware practitioners to be an inherent right of the stockholders entitled to vote.")

[140] *See In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 802 (Del. Ch. 2022) ("Assuming the truth of the well-pleaded allegations in the Complaint and drawing all reasonable inferences in favor of the plaintiffs, the plaintiffs have brought a direct claim stemming from the defendants' interference with a personal right of stockholders.").

[141] Countercl. Ex. A § 7.6.

The counterclaim, fairly read, then alleges that on December 7, 2023, the Roots board (Dorsey being its only member) signed a unanimous written consent to delete Section 7.6 of Roots' bylaws in its entirety and replace it with this:

> These Bylaws may be amended or repealed, and new bylaws adopted, *solely* by the Board of Directors.[142]

Counterclaim Defendants insist this is much ado about nothing. They criticize Jones for "mak[ing] no mention of [Roots'] Certificate of Incorporation or who was empowered to make amendments to the bylaws under the then-current organizational documents of [Roots]."[143] They say "[t]here is nothing improper about the bylaw amendment: Dorsey, as the Company's director, used the power granted by the Company's Certificate of Incorporation to amend the bylaws."[144] They also say Jones does not have standing to challenge the bylaw amendment because he "fails to plead that he is a stockholder" and seeks relief beyond what would be permissible for a Section 109 violation.[145]

Counterclaim Defendants mischaracterize the Section 109 Claim. The dispute is not whether the Roots board had the power to make *an* amendment to Roots' bylaws, it is whether the Roots board had the power to make *this*

---

[142] *Id*. Ex. B at 1 (emphasis added).

[143] Countercl. Opening Br. 17.

[144] *Id*.

[145] *Id*. at 17–18.

amendment. And for more than half a century, the Delaware General Corporation Law has been clear that the Roots board did not:

> After a corporation . . . has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall be in the stockholders entitled to vote . . . . The fact that such power has been so conferred upon the directors . . . shall not divest the stockholders . . . of the power, nor limit their power to adopt, amend or repeal bylaws.[146]

Case law confirms this.[147] As do treatises.[148] Counterclaim Defendants' argument that there is nothing to see here falls flat.

---

[146] 8 *Del. C.* § 109(a); *see also* 59 Del. Laws ch. 437, § 1 (1974).

[147] *See Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 956 (Del. Ch. 2013) ("Section 109(a) vests in the shareholders a power to adopt, amend or repeal bylaws that is legally sacrosanct, *i.e.*, the power cannot be non-consensually eliminated or limited by anyone other than the legislature itself.") (quoting *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 232 (Del. 2008)); *Kellner v. AIM ImmunoTech Inc.*, 320 A.3d 239, 257 n.130 (Del. 2024) ("Regardless of the authority vested in the board, stockholders retain the power to adopt and amend bylaws[.]") (citing *Boilermakers*, 73 A.3d at 956).

[148] *See, e.g.*, ROBERT S. SAUNDERS, ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 109.11 (7th ed. 2026) (explaining that after the 1974 amendments to Section 109, "stockholders or members of a corporation always have the power to adopt, amend, or repeal bylaws, even when such power has also been granted to the directors or governing body by the certificate of incorporation"); R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 1.11 (4th ed. 2026) ("After a corporation receives payment for any of its stock, the power to adopt, amend, or repeal by-laws resides exclusively 'in the stockholders entitled to vote' unless the certificate of incorporation confers a concurrent power on the board . . . . Section 109 further provides, however, that the grant of such concurrent power to the board in the certificate of incorporation does not divest the stockholders of their power nor limit their rights with respect to adoption and amendment of the by-laws.") (internal citations omitted); DAVID A. DREXLER, ET AL., DELAWARE CORPORATION LAW & PRACTICE § 9.02 (2025) ("Even where the certificate of incorporation grants authority over bylaws to directors, the stockholders continue to have power over the bylaws.").

So, too, does Counterclaim Defendants' argument that Jones "fails to plead he is a stockholder."[149]  Jones alleges he is a stockholder in paragraph 6 of the counterclaim:  "[T]he challenged actions have caused direct harm to him as a shareholder and to [Roots] as a whole."[150]  Whether Jones would be able to prove up this terse statement is not an appropriate inquiry at the motion to dismiss stage.[151]  A stockholder's direct statutory claim is not subject to the same stringent pleading-stage burden as are derivative claims under Rule 23.1 and Section 327 of the DGCL.[152]

---

[149] Countercl. Opening Br. at 17.

[150] Countercl. ¶ 6.

[151] I reject Counterclaim Defendants' argument that a list of stockholders Jones attached to a motion he filed after filing his counterclaim, which does not list him as a stockholder, is fatal to Jones' assertion that he is a stockholder. *See* Countercl. Opening Br. 17–18 (citing Dkt. 92 Ex. A).  That list is an exhibit to an April 2020 stockholders agreement, and the purportedly unlawful bylaw amendment occurred in December 2023.  Counterclaim Defendants offer no reason why the court is allowed, let alone required, to decide as a matter of law that Roots' stockholder base could not possibly have changed in the 44 months between those two events.  Indeed, the stockholders agreement itself appears to contemplate other persons could become stockholders.  *See* Dkt. 92 Ex. A at 1.

[152] *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. Ch. 1997) ("In asserting direct claims, as distinct from stockholder derivative claims, the complaint need give only general notice of the claim asserted.") (citing *Rabkin v. Philip A. Hunt Chem. Corp.*, 498 A.2d 1099, 1104 (Del. 1985)); *see also Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 n.42 (Del. 2021) ("Derivative claims are also subject to higher pleading standards than direct claims."); *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 974 (Del. Ch. 2001) ("[Rule 23.1] pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleading.") (quoting *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)).

Counterclaim Defendants' third argument against the Section 109 Claim also fails. A Rule 12(b)(6) motion "does not target the types of relief that a plaintiff might obtain." *DBMP LLC v. Del. Claims Processing Facility, LLC*, 349 A.3d 663, 700 (Del. Ch. 2025). "A court determines remedies after trial, so a pleading-stage assessment is usually premature." *Id.* (citations omitted). Such is the case here. Counterclaim Defendants argue that the only remedy this court can grant for the adoption of an invalid bylaw amendment is to void the amendment,[153] but the one case they cite for this proposition, *Crown EMAK Partners, LLC v. Kurz*,[154] does not say that. In *Crown EMAK Partners* the Supreme Court said that "a bylaw provision that conflicts with the DGCL is void." 992 A.2d at 398. It did not say that voiding an invalid bylaw amendment is the *only* permissible form of relief regardless of the particular facts and circumstances of a given case.[155]

---

[153] Countercl. Opening Br. 18.

[154] 992 A.2d 377 (Del. 2010).

[155] Counterclaim Defendants also argue the entire counterclaim should be dismissed because Jones waived his claims by not responding to any of the arguments made in Counterclaim Defendants' opening brief. *See* Reply Br. in Supp. of Plfs./Countercl. Defs.' Mot. to Dismiss the Countercl., Dkt. 134 at 3–5 (citing *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) and other authorities). I acknowledge this is the general rule, but I decline to follow it here, as there is evidence in the record, more recent than Jones' answering brief, indicating Jones was not intending to abandon the Section 109 Claim. *See* Consol. Final Reply Br., Dkt. 143 at 3 ("Sole director Bryan Dorsey: . . . amended § 7.6 to vest bylaw authority solely in the board, consisting only of himself; in violation of DGCL §§ (*sic*) 109(a)[.]"). *Cf. State v. Lawrie*, 1995 WL 818511, at *17 (Del. Super. Nov. 28, 1995) ("While the opinions of the Delaware Supreme Court teach that issues not briefed are deemed waived and this rule satisfies

- 40 -

For these reasons, I find that the Section 109 Claim in Count I survives the motion to dismiss.[156]

## III. CONCLUSION

For the reasons explained above, the court denies each of Jones' motions, grants Counterclaim Defendants' motion to dismiss as to Counts II through XIII of the counterclaim, and grants in part and denies in part Counterclaim Defendants' motion to dismiss as to Count I of the counterclaim. This is a Report under Court of Chancery Rule 144(b)(1). Under Court of Chancery Rule 144(c)(2)(A), exceptions to this Report are stayed pending issuance of a final report in this case.

---

the intent of judicial economy, I will consider each of these claims so that there is a full adjudication of [defendant's] assertions.").

[156] In declining to dismiss the Section 109 Claim, I am not expressing a view as to whether there should be any limits on the scope or sequencing of discovery on this claim.